IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

Criminal No. ELH-11-0258

RICHARD ANTHONY WILFORD

**MEMORANDUM**

**A. Background**

This Court held two days of motions hearing in January and March 2013, which culminated in a Memorandum Opinion and Order of June 7, 2013 (ECF 205, 206). In the Memorandum Opinion and Order, I granted in part and denied in part Wilford's Motion For Disclosure (ECF 166). In particular, I ordered the Government to produce all directives or instructions issued to federal law enforcement agents involved in the investigation of Wilford that directed compliance with the August 2010 decision of the United States Court of Appeals for the D. C. Circuit in *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010); and I denied Wilford's Motion To Suppress (ECF 160), without prejudice to his right to renew his argument as to the inapplicability of the good faith defense to the federal agents' warrantless use of slap-on GPS trackers, based on documents that might be produced by the Government in connection with my ruling as to ECF 166

Thereafter, the Government produced one document under seal – an email of August 6, 2010. On July 25, 2013, Wilford filed a "Request To Reconsider Court's Order Denying Suppression And Request For Franks Hearing Based On New Discovery" ("Motion for Reconsideration"), with exhibits (ECF 217). The Government then filed a response in

opposition. ECF 222. *See also* ECF 243 (Letter of 11/1/13 from defense counsel to Court, outlining issues). On November 6, 2013, I held an evidentiary hearing in regard to the Motion for Reconsideration, at which DEA Special Agents Todd Edwards and Mark Lester testified, along with defendant Richard Wilford.

After the hearing, the Government submitted a letter memorandum to the Court, ECF 249, complaining that Wilford belatedly raised a new issue pertaining to F. R. Crim. P. 41(d). In its view, the contention was waived because it was untimely. *See* Fed. R. Crim. P. 12(b)(3)(C), 12(c), and 12(e). Alternatively, the Government argued that Wilford's new arguments lack merit.

Preliminarily, in ECF 156, the Court extended the motions deadline for Wilford to November 11, 2012, to permit him to file supplemental motions. Thus, to the extent that defense counsel has presented new arguments that could have been timely raised, such as those under F. R. Crim. P. 41, I agree with the Government that the contentions are subject to waiver. However, given the importance of this case to the defendant (and to avoid any potential claims of ineffective assistance of counsel), I will overlook any failure of the defense to have raised contentions that should have been raised previously. Nevertheless, for the reasons set forth below, and for the reasons set forth in my earlier opinion (ECF 205), incorporated herein, Mr. Wilford's arguments, new and old, do not persuade me that I erred in my ruling as to the good faith defense. I will also deny the request for a *Franks* hearing based on new discovery.[1] But, as explained, *infra,* I will grant Wilford's request for reconsideration of the Court's ruling, in part, and deny it, in part.

---

[1] The issue of the *Franks* hearing was not specifically addressed at the hearing on November 6, 2013.

## B. Discussion

### (1)

Mr. Wilford urges the Court to reconsider its decision with respect to cell phone pinging because, in State court, when the agents sought authorization in connection with the wiretap applications, the case agents did not rely on the statute used to support their request for authorization to conduct cell phone pinging. In particular, in regard to cell phone pinging, law enforcement relied on Md. Code, § 10-4B-01 of the Courts and Judicial Proceedings Article ("C.J.") (the pen register statute). Yet, in regard to the wiretap application, law enforcement relied on C.J. § 10-408(b)(2) (the "wiretap" statute). In my view, the distinction is not material. The agents were not precluded from relying on two separate statutes, and the use of one statute in one context does not become improper merely because, in another context, the agents relied on a different statute. In either event, the request for pinging data satisfied the requirements of the Fourth Amendment. *See* Memorandum Opinion, ECF 205 at 52-54.

In his Motion For Reconsideration, Wilford also contends that the application for Trap and Trace for phone number 410-984-4229, dated October 27, 2010, contains the same errors as the application for Trap and Trace for phone number 410-927-4365, dated November 18, 2010. The application of November 18, 2010, erroneously indicated that in August 2010 CS1 named Wilford as the source of drugs when, in fact, CS1 named Hayes. In addition, it erroneously recited that 410-984-4229 was in constant contact with Hayes' target phone and that it was used by Wilford when, in fact, it was registered to Michael Smooth. Notably, however, Smooth's company, B'More Dumping, shared an address with Wilford's business, R.A.W. Enterprises, which understandably led to confusion in the early stages of the investigation.

The application of October 27, 2010, was authored by Special Agent Mara Hewitt, who also authored the application of November 18, 2010. The applications were submitted just a few weeks apart, and it is apparent that, in the later application, Special Agent Hewitt merely perpetuated the mistakes contained in her earlier application. Based on Agent Hewitt's testimony at the prior hearing, there was not a shred of evidence to suggest that she acted deliberately or recklessly. She was, at worst, inexperienced and careless. And, as I noted earlier, the agents had no need to mislead, because by November 18, 2010, they had ample evidence to support a finding of probable cause as to Wilford's involvement. *See* ECF 205 at 59-60.

**(2)**

As indicated, in response to my Order of June 7, 2013 (ECF 206), the Government produced a single email that was disseminated by the Office of Enforcement Operations ("OEO") of the United States Department of Justice, on or about August 6, 2010, in response to the *Maynard* decision. *See* ECF 222-1(Sealed). The United States Attorney's Office in Maryland was a recipient of the email. AUSA Barbara Sale then forwarded it to other prosecutors in the United States Attorney's Office in Maryland. The prosecutor in this case, Assistant United States Attorney John Sippel, represented that he received the email and promptly forwarded it to DEA Agents Mark Lester and Todd Edwards, with whom he had been working on an unrelated matter.[2]

In particular, the email disseminated by OEO on August 6, 2010, advised of the *Maynard* decision. The subject line of the OEO email stated: "URGENT UPDATE: Slap-on GPS vehicle tracking devices." The email rated the importance of the content as "High." The text provided, in part: "OEO believes that the court's decision is fundamentally wrong and incompatible with

---

[2] As discussed, *infra,* Agent Lester stated that he did not recall receipt of the email from the prosecutor, but learned of it from his colleague.

4

established Fourth Amendment principles. (As a counterpoint, we note the decision last week in *United States v. Jesus-Nunez*, 2010 WL2991229 (M.D. Pa. July 27, 2010), finding such surveillance permissible over a period of more than eleven months.") OEO's email also stated: "In the meantime, OEO's view is that other circuits are unlikely to follow *Maynard*, and that as a formal legal matter the use of magnetic vehicle tracking devices without a warrant ought to be upheld elsewhere in the federal courts." Nonetheless, OEO warned: "[P]rosecutors and agents outside the 7th, 8th, and 9th Circuits *may* wish to consider obtaining warrants as a precaution pending final disposition of *Maynard*. In particular, districts in the Fourth Circuit adjacent to D.C. should give careful thought to the possibility that tracked vehicles may travel into D.C., especially in cases where charges may eventually be brought in the latter district." (Emphasis added.)

At the hearing held by this Court on November 6, 2013, Agent Edwards testified that the DEA agents did not receive a notice from the Justice Department about the *Maynard* decision, by way of email or otherwise. Rather, he received the email (ECF 222-1) from AUSA Sippel, with whom Agent Edwards had been working on another matter. At that point in time (August 2010), the investigation as to the case sub judice had not yet begun. Agent Edwards construed that email to read that it was "business as usual"[3] with regard to GPS slap-on tracking devices. Moreover, his office regarded *Maynard* as an "outlier." And, as previously discussed in ECF 205, after the investigation in this case began, the State prosecutor indicated that a warrant was not needed for use of a GPS slap-on device.

As I see it, the OEO email strengthens my analysis of good faith, as discussed in my Memorandum Opinion of June 7, 2013 (ECF 205). Among other things, it establishes that the

---

[3] I do not have a transcript of the hearing on November 6, 2013. The quotations used here derive from my notes, and are not meant to be an exact quotation of the testimony.

Department of Justice regarded the *Maynard* decision as contrary to settled law, and also believed it would not be adopted by other courts. The email did not require federal agents to obtain warrants before using GPS slap-on tracking devices. Instead, it suggested, as a "precaution," that agents *might* want to consider obtaining a warrant in connection with the use of a GPS. And, it warned districts adjacent to the District of Columbia to consider that tracked vehicles might enter D.C. This case did not involve the tracking of a vehicle in the District of Columbia, however, and it is understandable, from a plain reading of the OEO email, that the law enforcement agents involved in the investigation of Wilford did not believe they were *required* to obtain a warrant to utilize a slap-on GPS tracking device on a public road.

In short, the content of the OEO email does not undermine my resolution of the good faith issue. It is clear that the DEA case agents were made aware of the *Maynard* decision at the relevant time. But, there is nothing in the OEO email that mandated federal law enforcement agents to obtain search warrants before using slap-on GPS tracking devices in Maryland.

**(3)**

In his motion for reconsideration, Wilford requests a *Franks* hearing on newly discovered evidence, *i.e.*, the email disseminated to the DEA agents by the prosecutor in August 2010 concerning the *Maynard* decision. According to Wilford, the email established that "the DEA agents were forewarned that there was an issue of constitutionality regarding warrantless 'slap-on' GPS devices," and they were "strongly encouraged" to obtain a warrant prior to use of the GPS slap-on trackers. Defendant's Motion at 4.

Wilford also attempts to use the OEO email to undermine the credibility of Special Agent Lester, who testified at the first hearing that he did not contact the federal prosecutor to discuss the *Maynard* decision. At the hearing on November 6, 2013, Agent Lester reiterated that he did

not recall the receipt of the email directly from the prosecutor. Instead, Agent Lester claimed he learned of the OEO email from Special Agent Edwards.

In my view, Wilford has not created a *Franks* issue based on OEO's dissemination of the email of August 6, 2010, or because Agent Lester's memory may have been faulty as to how he learned of the substance of the email.

**(4)**

Wilford has a home in Cecil County, Maryland, with a three-car attached garage. The agents knew of the home prior to their use of any GPS tracking devices. Relying on *United States v. Karo*, 468 U.S. 705 (1984), discussed in my earlier Memorandum Opinion, and F. R. Crim. P. 41, as amended in 2006, the defendant contends that the agents were required to obtain a warrant before using the GPS tracking device on defendant's two vehicles, because the vehicles were located in a "constitutionally protected area, his garage." ECF 243.

Agent Lester explained that a GPS slap-on device "wakes up" when the vehicle moves. He testified that agents never used the GPS tracker to gain information in regard to a protected area. Rather, they used the GPS tracker when Wilford's vehicles were on a public thoroughfare. Moreover, when Wilford was at his home in Elkton, Maryland, the agents could not determine from the slap-on GPS tracking device whether Wilford's minivan or Honda Crosstour vehicles were in the garage, the driveway, or elsewhere on Wilford's property.

The defendant testified that in 2010 and 2011, he owned four vehicles. In addition to the Honda Crosstour and the minivan, he owned a Mercedes and a red F150 truck. Sometimes, all four vehicles were at his house in Elkton in Cecil County. If so, the truck was kept on the parking pad, and the Crosstour and the minivan were garaged. Wilford also owned two ATVs and a ride-on lawn-mower, which were kept in his garage.

7

In addition to his home in Elkton, the defendant had a house in California and a residence on Cliftview Avenue in Baltimore City. According to Wilford, he divided his time between his residences. In addition, Wilford stated that he occasionally stayed overnight with a friend in Randallstown, who has no garage. On those occasions, he parked his vehicle on the street. Thus, Wilford estimated that he stayed at his Elkton home about four nights a week. Ordinarily, when Wilford was at his Elkton home, his brown minivan and his Crosstour would have been in the garage, which is not visible to the public. He acknowledged, however, that he occasionally parked them outside of the garage.

On cross-examination, Wilford reviewed a defense exhibit introduced at the first hearing, marking the sites of the GPS data location in this case. Many of the sites put Wilford's vehicle on the deck of his Elkton home or even inside of the home, neither of which ever happened. In other words, the GPS tracking device provided a ballpark as to vehicle location, but it was not precise. So, the agents did not know from the data exactly where on defendant's property the vehicles were located. Although the agents would have known that the defendant's vehicles were at his Elkton residence, they would not know whether they were in the garage. Nor was it their intent to monitor the vehicles while at Wilford's home. Indeed, they did not conduct surveillance at the Elkton home. Rather, the agents' interest was in the vehicles while they were on the public roads.

The 2006 Advisory Committee Notes to Rule 41(d) state, in part: "And the warrant is only needed if the device is installed . . . or monitored (for example, while the car is in the defendant's garage) in an area in which the person being monitored has a reasonable expectation of privacy." The 2006 Advisory Committee Notes also state:

> The Amendment reflects the view that if the officers intend to install or use the device in a constitutionally protected area, they must obtain judicial

approval to do so. If, on the other hand, the officers intend to install and use the device without implicating any Fourth Amendment rights, there is no need to obtain the warrant.

Here, the agents did not install a GPS device. Rather, they used a slap-on device. Moreover, they did not intend to use the device in a constitutionally protected area. They already knew where Wilford lived before using the slap-on GPS device; they ascertained that information earlier in the investigation, and did not learn of it through the GPS tracking. And, even with the GPS device, they could not determine if a vehicle was in the attached garage, unless they conducted visual surveillance at the home. Moreover, no evidence was derived from any electronic surveillance while the vehicles were in the garage, nor was any information obtained from such tracking and used to support probable cause to obtain a search warrant of any premises associated with Wilford. *See Karo*, 468 U.S. at 720.

In *Karo*, 468 U.S. at 715-16, the Supreme Court noted that the monitoring of the beeper indicated that the beeper was inside the house, "a fact that could not have been visually verified. . . . Indiscriminate monitoring of property that has been withdrawn from public view would present far too serious a threat to privacy interests in the home to escape entirely some sort of Fourth Amendment oversight." The Supreme Court also said that, "if sufficient untainted evidence was presented in the warrant affidavit to establish probable cause, the warrant was nevertheless valid." *Id.* at 719. To my knowledge, no such taint occurred here.

Neither F. R. Crim. P. 41(d) nor the tracking device statute, 18 U.S.C. § 3117, alters my analysis of good faith. Section 3117(a) of Title 18 of the U. S. Code said, in part: "If a court is empowered to issue a warrant or other order for the installation of a mobile tracking device, such order may authorize the use of the device within the jurisdiction of the court. . . ." It did not

compel a warrant, however. And, Rule 41(d) provided that, if probable cause was shown, the magistrate judge must issue the warrant.

The facts at issue here occurred before the Supreme Court decided *Untied States v. Jones*, ___ U.S. ___, 132 S. Ct. 945 (2012). Although the agents failed to secure a warrant for use of the slap-on GPS tracking devices, I am satisfied that the agents were acting in good faith, for the reasons I previously stated in ECF 205.

Nevertheless, to the extent that the vehicles were tracked at or to the defendant's Elkton home, I will assume that the vehicles were parked in Wilford's garage. Therefore, I will suppress all evidence as to the location of the vehicles at the garage of the Elkton residence. In all other respects, the motion to reconsider is denied.

Finally, to the extent that there are any remaining issues or contentions raised by Wilford in his many submissions, but not specifically addressed and resolved by me, I find them to be without merit.

A separate Order follows.


Date: November 27, 2013                              /s/
                                                     Ellen L. Hollander
                                                     United States District Court