IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

RICHARD ANTHONY WILFORD,
a/k/a RICHIE RICH

Criminal No. ELH-11-0258

## MEMORANDUM

In the District of Maryland, defendant Richard Wilford was convicted of conspiracy to distribute five kilograms or more of cocaine.  After his sentencing, Mr. Wilford noted an appeal to the United States Court of Appeals for the Fourth Circuit.  During the pendency of his appeal, Mr. Wilford has filed several *pro se* motions in this Court.  By Order of December 7, 2015 (ECF 424), the Fourth Circuit stayed Mr. Wilford's appeal in order for this Court to address two of his motions:  ECF 416 and ECF 418.

## I.   Factual and Procedural Background[1]

## A.

On May 5, 2011, a federal grand jury in Maryland returned an Indictment charging that between August 2010 and May 2011, Richard Wilford and five others conspired to distribute and possess with intent to distribute five kilograms or more of a mixture or substance containing

---

[1] In a Memorandum Opinion of June 7, 2013 (ECF 205), and in a Memorandum of November 27, 2013 (ECF 252), I set forth the procedural and factual background of the case.  To the extent relevant, I incorporate the procedural and factual background set forth in ECF 205 and ECF 252.  In addition, the government's factual summary, set forth at ECF 426 at 2-8, constitutes an accurate summary of the facts, in the light most favorable to the government.

cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  ECF 1.  An arrest warrant was issued for Wilford on that date.  ECF 6.

A Superseding Indictment was filed on August 25, 2011.  ECF 59; *see also* ECF 60; ECF 61.  Like the Indictment, the Superseding Indictment alleged that from August 2010 until May 2011, Wilford and others conspired to distribute and possess with intent to distribute five kilograms or more of a mixture or substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  ECF 59.  The Superseding Indictment added a forfeiture count.  *Id.*

Law enforcement authorities attempted to arrest Wilford in California in August 2011, without success.[2]  Eventually, on September 16, 2011, Wilford was apprehended in Baltimore.[3]

Several pretrial motions were filed by Wilford's privately retained defense attorney.  Wilford proceeded to trial by jury beginning December 11, 2013.[4]  On December 18, 2013, the jury found Wilford guilty of conspiracy to distribute five kilograms or more of cocaine.  ECF 267; ECF 268.  On August 7, 2014, Mr. Wilford was sentenced to a term of imprisonment of 340 months and to a period of supervised release of 10 years.  ECF 353.[5]  Judgment was entered on August 12, 2014.  ECF 354.  Thereafter, on August 13, 2014, Wilford noted an appeal to the United States Court of Appeals for the Fourth Circuit.  ECF 357.

---

[2] The investigation of Wilford revealed that he had rented an apartment in Los Angeles under a fictitious name.  Approximately $68,000 and false identifications were recovered in Los Angeles, during a search of the apartment and a vehicle.

[3] In a search of Wilford's Baltimore apartment and vehicle, approximately $189,000 was recovered, along with multiple cell phones and a false identification.

[4] The five codefendants all pled guilty; Wilford was the only defendant to proceed to trial.

[5] The government sought a sentence of 30 years.  *See*, *e.g.*, ECF 369 at 178.

During the pendency of his appeal, Mr. Wilford, *pro se*, has filed several motions.  Two of them are the subject of this Memorandum.  In particular, Wilford filed a "Motion To Dismiss Or Vacate For Lack Of Jurisdiction To Hold Trial Void Of Any Constitutional Or Statutory Authority."  ECF 416, "Motion to Dismiss."  It is supported by the defendant's Affidavit.  ECF 416-1.  And, on September 28, 2015, Wilford filed "Petitioner's Motion For New Trial Based on Newly Discovered Evidence Pursuant to Fed. R. Crim. P. 33."  ECF 418, "Motion for New Trial."  It is supported by several exhibits, including Wilford's Affidavit,[6] all collectively filed as ECF 418-1.  In a consolidated response (ECF 426), supported by several exhibits (ECF 426-1 to ECF 426-10), the government opposes both motions.  *See* ECF 426.  Wilford has replied (ECF 430) and he has submitted additional exhibits.  *See* ECF 430-1 to ECF 430-8.  In response to an inquiry from the Court (ECF 432), the government filed a supplemental letter dated January 19, 2016.  ECF 433.  Mr. Wilford responded in correspondence docketed on February 1, 2016 (ECF 435) and again in a letter docketed on February 4, 2016.  *See* ECF 440.

In the interim, by Order of December 7, 2015 (ECF 424), the United States Court of Appeals for the Fourth Circuit granted the government's unopposed motion to hold Wilford's appeal in abeyance pending this Court's disposition of appellant's Motion to Dismiss (ECF 416) and Motion for New Trial (ECF 418).  No hearing is necessary to resolve these motions. *See* Local Rule 105.6.

## B.

The record reflects that on September 16, 2011, Wilford appeared before Magistrate Judge Beth Gesner for an initial appearance.  He was represented at the hearing by retained

---

[6] Wilford's affidavits, at ECF 416-1 and ECF 418-1, appear to be identical.

counsel, William B. Purpura, Jr.  *See* ECF 291 at 1-3.[7]  At that hearing, defense counsel advised

the court that the defendant had received a copy of the indictment.  *Id.* at 3.  Judge Gesner then

proceeded to advise Wilford that he had been charged in a superseding indictment with

conspiracy to distribute cocaine in violation of 21 U.S.C. § 846; the maximum penalty; the

mandatory minimum penalty, if convicted; and the forfeiture count.  ECF 291 at 3-4.  The

defendant expressly indicated that he understood the charge and the maximum possible penalty.

*Id.* at 4.  Thereafter, Judge Gesner advised the defendant of his rights.  The defendant was sworn

and, under oath, he indicated that he understood "everything so far[.]"  *Id.* at 5.

At the end of the proceeding, Judge Gesner asked:  "[D]o you want to do an arraignment

while you are here?"  *Id.* at 7.  Defense counsel responded:  "I would ask not for this -- for a lot

of reasons, but no."  *Id.*  For reasons not known to this Court, it appears that no arraignment was

ever held.

During the pendency of the case, the Court held several telephone conference calls with

the lawyers for both sides.  *See*, *e.g.*, ECF 69; ECF 86; docket entry of August 26, 2013; docket

entry of August 27, 2013; ECF 234; ECF 244.  And, on behalf of Wilford, defense counsel filed

numerous motions.  *See*, *e.g.*, ECF 92, Motion To Suppress Tangible And Derivative Evidence;

ECF 93, Defendant's Motion To Compel Disclosure Of Promises Of Immunity, Leniency, Or

Preferential Treatment And Disclosure Of Exculpatory Information And Points And Authorities

In Support Thereof; ECF 94, Motion For An Order Directing The Government To Provide

*Brady/Giglio/Jencks* Material; ECF 95, Motion For Disclosure Pursuant To Fed. R. Evid. 404(b)

And 609; ECF 96, Motion For Pretrial Procedures Regarding Recordings; ECF 97, Addendum

To Motion To Suppress Tangible And Derivative Evidence Pursuant To Federal Rule 12(b)(3)

---

[7] Mr. Purpura formally entered his appearance as counsel for Mr. Wilford on December 9, 2011.  *See* ECF 85.

And Request For A Franks Hearing; ECF 166, Motion For Disclosure Of Relevant Evidence Withheld By The Government And Request For Immediate Hearing.[8]   The government responded on December 21, 2012.  *See* ECF 165.  It also responded at ECF 173.

Motions hearings were held on January 25, 2013 and March 8, 2013.  *See* ECF 174; ECF 182.  And, as discussed, *infra*, another motion hearing was held on November 6, 2013.  *See* ECF 246.  The defendant was, of course, present at these hearings.  After the first hearing, counsel submitted supplemental briefing.  *See* ECF 180 (defense); ECF 181 (government).

By Memorandum Opinion (ECF 205) and Order (ECF 206) of June 7, 2013, the Court denied defendant's Motion to Suppress.  ECF 160.  I also granted Wilford's Motion for Disclosure.  ECF 166.

In a letter docketed June 25, 2013, Wilford wrote to the Court complaining about his lawyer.  ECF 208.  He also expressed his disagreement with the Court's ruling in ECF 206. Based on Wilford's correspondence, the Court referred the matter to a magistrate judge for an attorney inquiry hearing.  ECF 210; *see also* ECF 209.  That hearing was held before Magistrate Judge Gesner on July 3, 2013.  ECF 212.

Thereafter, Mr. Purpura remained as counsel and, on July 25, 2013, he filed a "Request To Reconsider Court's Order Denying Suppression And Request For Franks Hearing Based On New Discovery." ECF 217.  In addition, on September 3, 2013, defense counsel filed a "Request For Hearing" on defendant's Motion To Suppress Use of GPS, based on newly discovered evidence.  ECF 231.  As a result, the Court held another evidentiary motions hearing on

---

[8] On January 13, 2013, Wilford filed a Motion To Withdraw Request For GPS Data, because it had been provided by the government.  *See* ECF 171.  On May 22, 2013, Wilford filed a *pro se* "Motion To Compel The Government To Disclose All Discovery That May Be Relevant And Material to Defendant's Defense."  ECF 197.  And, on or about May 24, 2013, Wilford requested a copy of his docket sheet (ECF 198), which was provided to him a few days later. *See* ECF 202; ECF 203.

November 6, 2013.  *See* ECF 246.  It culminated in a Memorandum (ECF 252) and Order (ECF 253) of November 27, 2013, granting ECF 217 in part and denying it in part.  The Court also found any remaining defense issues "to be without merit."  ECF 252 at 10.

Trial began on December 11, 2013 (ECF 257), and the jury returned its verdict on December 18, 2013.  *See* ECF 267; ECF 268.  On February 12, 2014, Mr. Wilford again corresponded with the Court regarding issues concerning his attorney.  ECF 281.  As a result, on February 12, 2014, the Court again referred the matter for an attorney inquiry hearing.  ECF 283.  In the meantime, on February 17, 2014, Mr. Purpura filed a Motion to Withdraw as counsel for the defendant.  As a result of the attorney inquiry hearing, conducted by Magistrate Judge Gallagher on February 18, 2014, an Order was entered granting Mr. Purpura's Motion to Withdraw as attorney for Mr. Wilford.  ECF 286, ECF 287.

Thereafter, a court-appointed lawyer entered an appearance for Wilford.  ECF 293.  That lawyer subsequently sought to withdraw as counsel.  ECF 320.  Therefore, I again referred the matter for an attorney inquiry hearing.  ECF 322.  Magistrate Judge Gallagher held a hearing on July 18, 2014 (ECF 325), and denied the motion to withdraw.  ECF 327.

## II.    Discussion

### A.  Motion to Dismiss

In his Motion To Dismiss (ECF 416), Mr. Wilford complains that the court "proceeded with the trial against Petitioner without affording him with an opportunity to plead to the indicted charge, or a plea being entered, void of any Constitutional or Statutory Authority."  *Id.* at 6; *see also* ECF 418-1 at 15 ¶ 2.  Specifically, Wilford points out that "the record is void of an

arraignment."  ECF 416 at 9.  Similarly, in his Affidavit (ECF 416-1), defendant claims he was not afforded "an opportunity to plead to any offense charged" in the case.  *Id.* ¶ 1.[9]

According to Wilford, "the district court acted without jurisdiction" because "it held a trial without a plea to the indicted charge."  *Id.*  As a result, Wilford claims he was deprived of due process.  *Id.*  Citing Rules 10, 11, and 43 of the Federal Rules of Criminal Procedure, Wilford claims he had a "constitutional right to plead to the charging instruments."  *Id.* at 7. Wilford adds:  "Here, the district court deprived Petitioner of procedural and substantial due process, by not complying with its obligation of ensuring that Petitioner was afforded an adequate opportunity to exercise his right to plea to the charged indictment.  At no time throughout the entire proceedings did the court stop to ask the Petitioner personally for his plea of guilty or not guilty.  Not only was this a mandatory requirement of Petitioner's right under the Fifth Amendment, but also an indispensable requisite of the court's right to proceed with a valid trial against him, without which the trial is an absolute nullity."  *Id.* at 7.

In addition, Wilford contends:  "At no time during any proceeding prior to the start of trial did the Petitioner appear in 'open court' where the court described the nature of the charged indictment or its elements to Petitioner.  Petitioner contends that it was his right to be adequately informed of the nature of the charges."  ECF 416 at 8; *see also* ECF 418-1 at ¶ 8.  Wilford adds

_____

[9] On February 11, 2016, Wilford filed "Clarification of Defendant's Motion to Dismiss (ECF 416) And Correction To Judicial Notice Dated 1/29/2016" ("Clarificaton").  ECF 441.  In the Clarification, Wilford asserts "that inherent in his Motion to Dismiss (ECF 416) is the Claim of a Speedy Trial Violation."  ECF 441 at 1.  He adds, *id.* at 2:  "Petitioner was unlawfully held in federal custody for years without ever being afforded the opportunity to plead to any charges . . . ."

As I see it, the Clarification raises a new issue, to which the government has not had an opportunity to respond.  Therefore, I decline to address the speedy trial issue alleged in the Clarification.

that "the Constitutional deprivations" that he described constitute "structural defects . . . rather than a simple error in the trial process itself." ECF 416 at 10.

Rule 10 of the Federal Rules of Criminal Procedure is titled "Arraignment." Rule 10(a) provides: "An arraignment must be conducted in open court and must consist of: (1) insuring that the defendant has a copy of the indictment or information; (2) reading the indictment or information to the defendant or stating to the defendant the substance of the charge; and (3) asking the defendant to plead to the indictment or information."

Fed. R. Crim. P. 11 is titled "Pleas." Rule 11(a) provides: "A defendant may plead not guilty, guilty, or (with the court's consent) nolo contendere." Rule 11(h) is titled "Harmless Error." It states: "A variance from the requirements of this rule is harmless error if it does not affect substantial rights."

As noted, Wilford asserts that "at no time prior to trial did [he] appear in open court where the nature of the charged indictment or any information was explained to [him]." *Id.* ¶ 8. Yet, that assertion is belied by the record as to the initial appearance.

At the defendant's initial appearance, Judge Gesner insured that the defendant had a copy of the charging instrument and advised the defendant of the substance of the charge. Judge Gesner also offered to conduct the arraignment. However, defense counsel did not want to proceed to an arraignment at that time. Therefore, the defendant was not asked how he wished to plead to the charge. For unknown reasons, a formal arraignment was never held. From a review of the record, however, I cannot discern any prejudice to the defendant from the fact that he was not arraigned.

The record reflects that, from the outset of this case, defendant vigorously contested the charge. Many defense motions were filed, and several days of motion hearings were held.

Wilford also attended a "reverse proffer session" in 2012. ECF 416-1, ¶ 3. Throughout the pretrial period, the defendant never voiced any complaints as to the lack of opportunity to enter a formal plea of guilty or not guilty. In the many defense submissions filed by defendant and his lawyer before trial, there was not a single complaint about the lack of an arraignment.

Advisory Committee Note 3 to Fed. R. Crim. P. 10 states: "Failure to comply with arraignment requirements has been held not to be jurisdictional, but a mere technical irregularity, not warranting a reversal of a conviction, if not raised before trial." The Note cites *Garland v. State of Washington*, 232 U.S. 642 (1914).

In *Garland*, the case proceeded to trial despite the lack of a formal arraignment of the defendant. The Court concluded that the failure to arraign the defendant was not an error of constitutional proportion, and that a defendant who knowingly proceeds to trial despite the lack of a formal arraignment is deemed to have waived his right to such a proceeding. What the Court said in *Garland* is noteworthy, *id.* at 644-45:

> It is apparent that the accused was tried and convicted upon an information charging an offense against the law; that he had a jury trial, with full opportunity to be heard, and that he was in fact deprived of no right or privilege in the making of his defense, unless such deprivation arises from the fact that he was not arraigned and required to plead to the second information before trial. The object of arraignment being to inform the accused of the charge against him and obtain an answer from him was fully subserved in this case, for the accused had taken objections to the second information, and was put to trial before a jury upon that information in all respects as though he had entered a formal plea of not guilty.

Of import here, the *Garland* Court rejected the defendant's claim that he was deprived of due process of law within the meaning of the Fourteenth Amendment. The Court reasoned, *id.* at 457:

> Due process of law . . . does not require the state to adopt any particular form of procedure, so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution. . . . Tried by this test it cannot for a moment be maintained that the

want of formal arraignment deprived the accused of any substantial right, or in any wise changed the course of trial to his disadvantage.  All requirements of due process of law in criminal trials in a state, as laid down in the repeated decisions of this court, were fully met by the proceedings had against the accused in the trial court.  The objection was merely a formal one, was not included in the general language in which the objection to the introduction of evidence was interposed before the trial, and was evidently reserved with a view to the use which is now made of it, in an attempt to gain a new trial for want of compliance with what in this case could have been no more than a mere formality.

The *Garland* Court expressly overruled the Supreme Court's earlier decision in *Crain v. United States*, 162 U.S. 625 (1896), in which the Court had ruled that a formal arraignment was "essential to a legal trial" and, in the absence of such a formal arraignment, a defendant would be "deprived of due process of law."  *Garland,* 232 U.S. at 645-46.  As the Supreme Court explained in overruling *Crain*, "[t]echnical objections of this character were undoubtedly given much more weight formerly than they are now."  *Id.* at 646.  The *Garland* Court adopted the dissenting view in *Crain*, which had posited that "'the defendant could not have been injured by an inadvertence of that nature.  He ought to be held to have waived that which, under the circumstances, would have been a wholly unimportant formality.'"  *Id.* (quoting *Crain*, 162 U.S. at 649) (Peckham, J., dissenting).  The *Garland* Court continued:

> "'A waiver ought to be conclusively implied where the parties had proceeded as if defendant had been duly arraigned, and a formal plea of not guilty had been interposed, and where there was no objection made on account of its absence until, as in this case, the record was brought to this court for review.  *It would be inconsistent with the due administration of justice to permit a defendant under such circumstances to lie by, say nothing as to such an objection, and then for the first time urge it in this court.*'"

*Garland,* 232 U.S. at 646 (quoting *Crain*, 162 U.S. at 649) ((Peckham, J., dissenting) (emphasis added here).

The Fourth Circuit's decision in *United States v. Williams*, 152 F.3d 294 (4th Cir. 1998), is also informative.  There, the Court said: "A failure to arraign only warrants a reversal if it

causes prejudice or impairs a substantial right." *Id.* at 299 (citing *Garland*, 232 U.S. at 644). More recently, the Fourth Circuit has said that "technical noncompliance with the procedural requirements of [Rule 10] does not warrant reversal of a conviction if not raised before trial." *United States v. Solomon*, 581 Fed. Appx. 270, 273 (4th Cir. 2014) (citing *United States v. Reynolds*, 731 F.2d 135, 136 n.2 (8th Cir. 1986)).  *See also United States v. Disher*, 201 F.3d 437, 1999 WL 686900 (4th Cir. Sept. 3, 1999) (per curiam) (upholding conviction where defendant was not arraigned on a charge of refusing to submit to a blood alcohol test); *United States v. Correa-Ventura*, 6 F.3d 1070, 1074 (5th Cir. 1993) (upholding conviction where the defendant was not arraigned on a superseding indictment adding an element to a firearm violation); *United States v. Boruff*, 909 F.2d 111, 117-18 (4th Cir. 1990) (upholding conviction where the defendant was not arraigned on a superseding indictment modifying drug charges); *Reynolds*, 781 F.2d at 136 n.2 (upholding conviction where defendant was not arraigned on a superseding indictment substantially similar to the original indictment).

Relying on *Garland* and its progeny, the government insists that Wilford should "not be allowed to sandbag the government and the court by silently proceeding to trial in the absence of arraignment, and then using the oversight as a basis for a new trial motion."  ECF 426 at 11.  I agree.

The record amply demonstrates that the defendant was aware of the charge against him. An initial appearance was held on September 16, 2011, at which defendant had a copy of the Superseding Indictment.  He was advised of the charge, the maximum penalty, and the mandatory minimum penalty, and was also advised of his rights.  Moreover, Wilford indicated that he understood the charge and his rights.  In addition, Judge Gesner asked Wilford if he wanted to be arraigned at that time but, through counsel, he declined.   Thereafter, Wilford filed

numerous pretrial motions and vigorously litigated every aspect of this case, without ever complaining that he had not been arraigned.

The lack of formal arraignment as to the Superseding Indictment did not prejudice Wilford or affect his substantial rights in any way. Therefore, there is no merit to the Motion to Dismiss.

## B.  Motion For New Trial

Mr. Wilford moved for a new trial, pursuant to Fed. R. Crim. P. 33, based on a claim of newly discovered evidence. ECF 418. He asserts several grounds to support his Motion for New Trial, which I shall discuss, in turn, *infra*.

Rule 33(a) of the Federal Rules of Criminal Procedure states, in part: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." A court is guided by five factors, as set forth by the Fourth Circuit in *United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1993) (citing *United States v. Bales*, 813 F.2d 1289, 1295 (4th Cir. 1987)). They are as follows, *Custis*, 988 F.2d at 1359:

> (a) the evidence must be, in fact, newly discovered, *i.e.*, discovered since the trial;
> (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

In order for the defendant to prevail on a motion for new trial, all five elements must be established. *See United States v. Fulcher*, 250 F.3d 244, 249 (4th Cir. 2001); *United States v. Singh*, 54 F.3d 1182, 1190 (4th Cir. 1995).

In *United States v. Quiles*, 618 F.3d 383, 392 (3rd Cir. 2010), the Third Circuit observed that a court that is asked to grant a new trial must "examine whether the defendant has demonstrated the necessary exculpatory connection between the [newly discovered] evidence

and the offense or has demonstrated that the newly discovered evidence totally undermined critical inculpatory evidence." Here, the alleged newly discovered evidence does not "throw severe doubt on the truthfulness of the critical inculpatory evidence that was introduced at [Wilford's] trial." *Id.* at 393. Nor does it "severely weaken" the "critical evidence" presented by the government, so as to justify a new trial. *Id.* at 394.

### 1. Witness Intimidation

Wilford asserts that the prosecutor "committed the act of witness tampering" because "he impermissibly interfered with the prospective defense witness." ECF 418 at 4. In particular, Wilford claims that "just prior to the December 11, 2013 trial," the prosecutor "threatened to prosecute prospective defense witness Michael Smooth if he testified on Petitioner's behalf." ECF 418 at 4. He adds that, "[a]s a direct result" of the prosecutor's conduct, "the witness did not testify. . . ." *Id.* Wilford cites, *inter alia*, 18 U.S.C. § 1512(b), which makes it illegal to intimidate or threaten to prevent the testimony of a witness. ECF 418 at 4.

According to Wilford, in early December 2013, the prosecutor learned of Smooth's intention to testify on Wilford's behalf at the trial. Wilford relies on a "'statement'" from Smooth, to the effect that if Smooth were to testify for Wilford, the prosecutor "would have him lock[ed] up and charge him federally." *Id.* at 5. According to Wilford, because of the threat, Smooth chose not to testify at Wilford's trial.

Wilford refers to an undated letter that Smooth sent to the Court, docketed on August 14, 2014. *See* ECF 359-1. It was discussed at the Rule 35 hearing held on August 12, 2014. *See* ECF 370. Smooth wrote that the prosecutor told Smooth's attorney: "[I]f Michael Smooth comes to court and testifies on Richard Wilford's behalf im [sic] gonna lock him up for perjury

and charge him federal [sic].  [A]s a result of [the prosecutor's] remarks I Michael Smooth didn't

testify on Richard Wilford's behalf."  ECF 359-1; *see also* ECF 370 (with slight variations).

According to Wilford, Smooth was "an integral part of [his] defense."  ECF 418 at 6.  He

claims that Smooth would have testified that he (Smooth) was the owner of B-More's Dumping,

a dump truck business with a cell phone number of 410-984-4229, "both of which the

government falsely attributed to Wilford."  *Id.*  But, due to the "intimidating and prejudicial"

conduct of the government, Wilford asserts he was "deprived . . . of the right to present witnesses

in his favor resulting in an unfair trial in violation of the Sixth Amendment."  *Id.*  And, in

Wilford's Affidavit, he claims that, prior to the trial in December 2013, he did not know the

reason why Smooth declined to testify.  ECF 418-1 at 15 ¶ 5.

The government asserts that "the fact that Smooth was not going to testify at Wilford's

trial" is not "'newly discovered,'" because the fact that Smooth's lawyer advised Smooth not to

testify occurred about two weeks prior to Wilford's trial, and constituted "a fact available to

Wilford and his counsel prior to trial."  ECF 426 at 15.  Therefore, according to the government,

"the issue should have been raised no later than 14 days after the guilty verdict."  *Id.*  In its view,

the Motion for New Trial on this basis is "untimely."  ECF 426 at 14.

In addition, the government notes that Wilford's lawyer "was aware of Smooth's

counsel's advisement to his client [not to testify at Wilford's trial] and did not subpoena or

otherwise call Smooth to testify at trial."  *Id.* at 14-15.  Indeed, the record does not reflect a

subpoena to Smooth.

Smooth was charged by the State of Maryland as a result of the same drug conspiracy in which Wilford was involved. *See* ECF 418-1 at 4-7.[10]  Moreover, the government maintains that there was no "prosecutorial misconduct" in this case. *Id.*  In its view, "Wilford cannot establish that the prosecutor's conduct was improper and that the conduct affected [Wilford's] substantial rights so as to deprive him of a fair trial." *Id.* at 16.  In this regard, the prosecutor asserts that he never had "direct contact" with Smooth, and "all communications were with Smooth's counsel." *Id.* at 16.

At the Rule 35 hearing held on August 12, 2014 (ECF 370), the prosecutor explained that he spoke with Smooth's lawyer, who was then facing related charges in the Circuit Court for Baltimore City, about "the many pitfalls and legal ramifications of . . . taking the stand in federal court and possibly implicating himself in some form or fashion." *Id.* at 35.  However, the prosecutor denied having threatened Smooth in any way. *Id.*

The government relies on *United States v. Scheetz*, 293 F.3d 175 (4th Cir. 2002).  There, the Fourth Circuit stated that, to obtain a new trial on a claim of prosecutorial misconduct, a defendant must show that (1) the prosecutor's conduct or remarks were improper, and (2) the conduct or remarks prejudicially affected his substantial rights so as to deprive him of a fair trial.

The proffer by Mr. Wilford as to what Mr. Smooth would have said, had he testified, does not provide a basis for the Court to conclude that Mr. Smooth's failure to testify at trial deprived Mr. Wilford of a fair trial.  The evidence against Mr. Wilford was, as the government puts it, "substantial and strong."  ECF 426 at 16.  I agree with the government that "it is

---

[10] As noted in my Memorandum Opinion (ECF 205 at 1 n.1), six of the twelve alleged conspirators were charged in a Maryland court.  Smooth was one of them.  On September 14, 2012, Smooth was sentenced in the Circuit Court for Baltimore City for the offense of conspiracy to distribute cocaine.  That court imposed a sentence of eight years of imprisonment, of which five years was suspended, to be served on home detention.  *See* ECF 418-1 at 4.

improbable that Smooth's testimony would have altered the jury's verdict against Wilford." ECF 426 at 16.

Moreover, it appears that the defendant knew of Mr. Smooth's decision prior to trial. Yet, there is no indication that the defense ever sought to call Mr. Smooth as a witness at the trial.   And, the government never communicated with Smooth personally.   Rather, the government communicated only with Smooth's lawyer.

In my view, on this basis, Mr. Wilford has not established his entitlement to a new trial under Rule 33 of the Federal Rules of Criminal Procedure.

## 2. *Brady* Violation

Wilford contends that he is entitled to a new trial because "the Government withheld exculpatory evidence necessary for him to prepare an adequate defense," in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).   ECF 418 at 7.

Wilford maintains that in the Spring of 2012, the government conducted "a reverse proffer session" with codefendant Lawrence Lee Hayes, Jr., at which Hayes advised the prosecutor that Wilford "had no involvement with or anything to do with what Hayes was pleading guilty to."   ECF 418 at 7.   Claiming that Hayes's statements were exculpatory (ECF 418-1 at 15 ¶ 6), Wilford contends that the prosecution breached its duty to disclose the information to him.   ECF 418 at 8.   According to Wilford, "the result of the trial would have been different" if the government provided him with the information to which he was entitled. *Id.*

In support of his contention, Wilford has submitted the Affidavit of Mr. Hayes, dated July 17, 2014.   ECF 418-1 at 9-10.   In his Affidavit, Hayes avers that in May (no year is

specified)[11] he asked his lawyer and the prosecutor "to remove (Mr. Richard Anthony Wilford) name from my plea, because Mr. Wilford had nothing to do or involvement with what I, [Mr. Hayes] is pleading to and the prosecutor refused to do it." *Id.*

The government has submitted the Declaration of Special Agent Mark Lester, one of the primary case agents who investigated this case. ECF 426-5. Agent Lester avers that he participated in the "reverse proffer" with Hayes, the "lead defendant," on May 10, 2012. ECF 426-5 at 3, ¶ 7. Hayes's lawyer was also present. Lester states, *id.*: "At no time during the reverse proffer did Hayes state or indicate that co-defendant Richard Wilford was not involved in the drug-trafficking conspiracy with Hayes." *Id.*

The government has also submitted exhibits pertaining to Hayes's guilty plea proceeding. In particular, on May 10, 2012, more than two years before Hayes wrote his Affidavit, Hayes pleaded guilty to the charge of Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. § 846. ECF 109; *see also* ECF 110 (Hayes plea agreement); ECF 426-6 (Hayes plea agreement). Hayes stipulated that the offense involved at least 50 kilograms of cocaine but less than 150 kilograms of cocaine. ECF 110 at 4, ¶ 6(a). Hayes's plea was entered pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, in which the parties agreed to recommend to the Court a sentence of 180 months imprisonment. ECF 110 ¶¶ 9, 10; *see also* ECF 426-6 (Hayes plea agreement).

Notably, Hayes's plea agreement contained a Statement of Facts set forth in Attachment A. ECF 110 at 10; *see also* ECF 426-6. The Statement of Facts expressly indicated that Hayes conspired with several others, including Wilford, to obtain large quantities of cocaine from sources of supply in California and then ship the drugs to Maryland.

---

[11] Hayes's Affidavit was docketed on July 24, 2014. ECF 334.

The government has also submitted the transcript of Hayes's guilty plea proceedings on May 10, 2012. *See* ECF 426-7. At his guilty plea proceedings, Mr. Hayes was placed under oath. *See* ECF 426-7 at 3. During the proceeding, the government summarized the facts, including that Hayes conspired with Wilford and others. *Id.* at 37-38. At the conclusion of the factual summary, I asked Mr. Hayes if the factual summary was accurate. *Id.* at 38. He responded in the affirmative. I also asked him whether he had any "additions, corrections, or modifications" to the factual summary. Mr. Hayes responded: "No." *Id.* Clearly, Mr. Hayes's Affidavit of July 2014 (ECF 418-1 at 9-10) contradicted the sworn statements he made to the Court at his guilty plea in May 2012 concerning Mr. Wilford's involvement in the conspiracy.

In *United States v. Lemaster*, 403 F.3d 216 (4th Cir. 2005), the Fourth Circuit considered a claim under 28 U.S.C. § 2255 raised by a defendant who had pleaded guilty. The defendant, who claimed ineffective assistance of counsel, alleged that the final plea agreement he signed differed from the one he had reviewed with his lawyer; that his lawyer failed to explain the changes in the plea agreement; that counsel failed to inform the defendant of the potential punishment he faced; and that the defendant was threatened with deprivation of medical care if he did not plead guilty. *Id.* at 222. These allegations contradicted statements the defendant had made under oath during his Rule 11 hearing, when he pled guilty. *Id.*

Of import here, the *Lemaster* Court said: "'[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . "carry a strong presumption of verity . . . because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy.'" *Id.* at 221 (citations omitted). The Court added that because such sworn statements "carry a presumption of veracity," a defendant challenging his own statements faces "'a formidable barrier in any subsequent collateral proceedings.'" *Id.* (citations omitted).

*Id.* Further, the Court observed that "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *Id.* (quoting *Crawford v. United States*, 519 F.2d 347 (4th Cir. 1975)).

As indicated, Hayes's Affidavit directly contradicts his sworn statements made at his guilty plea proceeding more than two years earlier. And, as the government points out (ECF 426 at 21), Wilford could have subpoenaed Hayes as a witness at trial, so that Hayes could testify on Wilford's behalf. He did not do so.

I am satisfied that Wilford's claim of a *Brady* violation is without merit and does not warrant a new trial.

### 3. Rule 16 Violation

Wilford claims that he is entitled to a new trial because the government violated Fed. R. Crim. P. 16. ECF 418 at 9. In particular, he claims that "the government failed to disclose . . . its secret use of a highly intrusive, invasive, cellphone surveillance device called a 'Stingray' or other geolocation cellphone tracking equipment which the government had a duty to disclose [under] Federal Rules of Criminal Procedure Rule 16." *Id.* Further, he notes that his defense attorney specifically sought such information. *Id.* Moreover, Wilford maintains that, at a "reverse proffer session" in March 2012, the prosecutor explicitly denied the use of any "GPS tracking" of Wilford. *Id.* at 10; *see also* ECF 418-1, ¶ 3. Yet, in December 2012, the prosecutor "disclosed an extensive amount of GPS tracking conducted by the government on two vehicles belonging to Petitioner and Petitioner's cellphones . . . ." ECF 418 at 10.

According to Wilford, "[n]ewly discovered evidence has revealed" that the Baltimore Police Department "has been secretly using cell-site simulators (A.K.A. 'stingray') since 2007 in

investigations involving cellphones without judicial knowledge or vallid [sic] authorization." *Id.* at 11.  And, citing Wilford's Exhibit G and Exhibit H (ECF 418-1 at 21; ECF 418-1 at 30), Wilford maintains that the prosecutor acknowledged that "a stingray/triggerfish device was used to obtain information pertaining to one of Wilford's co-defendants," pursuant to "a court order . . . ."  ECF 418-1 at 31.[12]

The government disputes the allegations.  In support of its position, the government has submitted a copy of the Application to the United States District Court, submitted on March 1, 2011, by Assistant United States Attorney James Wallner, seeking an Order authorizing the use of a pen register and trap and trace device "to obtain identifying information for wireless telephone devices. . . ."  The Application pertained to Hayes, not Wilford; Hayes was identified as the target. *See* ECF 426-8 at 1-5.  Judge Gesner signed the Order on March 1, 2011, but only for cellular phones used by Hayes.  ECF 426-8 at 6-9.  And, according to the government, "All Rule 16 materials and information pertaining to the interception of wire and electronic communications of Hayes's cellphone assigned call number (443) 676-5615 (E-Line) were produced in discovery. *See* ECF 426-10 (Discovery Production Letter dated 9/19/11).

Agent Lester explains in his Declaration, ECF 426-5:  "A cell-site simulator is a mobile device that law enforcement agents can use to locate a cellphone whose identifiers are already known to law enforcement, or determine the identifiers of an unknown phone by collecting ('canvassing') and identifying signals from cellphones and the cellphone user's vicinity.  Cell-site simulators are sometimes also referred to 'triggerfish' or 'stingray' or by other brand names.

---

[12] In ECF 205, I addressed Wilford's challenge to evidence derived from the use of GPS tracking devices and "pinging" of cellular phones under Maryland's pen register and trap and trace statute.

Cell-site simulators are not able to collect the content of communications from cellphones." *Id.* ¶ 4.

The government posits that "the terms 'triggerfish,' 'stringray,' and 'cell-site simulator' were not used in the Government's Application and Order because the term 'cell site simulator' is defined as a pen register and trap and trace device or process under federal law." ECF 433 at 1. It cites 18 U.S.C. § 3127(3) and § 3127(4) to support its assertion. Hayes disputes this contention. ECF 435.

According to Agent Lester, prior to the actual use of the devices authorized by Judge Gesner, Hayes's service provider, AT&T, had informed the agents that on or about March 24, 2011, Hayes had changed his telephone number. *See* ECF 426-5 (Lester Declaration) at ¶ 5. Through the use of the cell-site simulator, the agents were able to confirm that Hayes's new cell phone number corresponded to the number that AT&T had provided on March 24, 2011. *Id.*

On April 1, 2011, law enforcement agents obtained authorization from the Circuit Court for Baltimore City to intercept wire and electronic communications as to Hayes's cellphone, with the assigned number of 443-676-5615 (E-Line). ECF 426-5, ¶ 6; *see also* ECF 426-9 (Affidavit of Detective Glen Hester, Baltimore Police Department, and Special Agent Mark Lester, Drug Enforcement Administration, submitted to the Circuit Court for Baltimore City on April 1, 2011). Agent Lester avers, *id.*: "During the monitoring of wire and electronic communications over 443-676-5615, there were no communications to or from defendant Wilford intercepted over the line. ECF 426-5, ¶ 6.

The government contends that use of the cell-site simulator does not constitute "newly discovered evidence" because it "did not yield any evidence that was not known to Wilford at the time of his trial." ECF 426 at 22. In particular, the government asserts: "The only evidence that

resulted from the use of the court-authorized cell-site simulator was confirmation of Hayes's cellphone number, which had been provided by AT&T prior to the use of the cell-site simulator." *Id.*

Alternatively, the government argues that, even if use of the cell-site simulator constituted "newly discovered evidence" (*id.* at 23), "Wilford cannot establish that the information is material or that it would have produced a different result." *Id.* In this regard, the government maintains that Wilford lacks standing to challenge the use of the cell-site simulator, or any information yielded as a result of such use, because it was used in connection with Hayes, not Wilford. *See*, *e.g.*, *Rakas v. Illinois*, 439 U.S. 128, 138-48 (1978). In other words, because the "targeted cellphone" belonged to Hayes, a coconspirator, and "no calls to/from Wilford were intercepted during the court's-authorized wiretap of the cellphone" (*id.* at 23), the government insists that Wilford does "not have standing to challenge the use of the cell-site simulator and any evidence derived from such use." *Id.*

Moreover, the government maintains that "the fact that a cell-site simulator was used would not have changed the outcome in Wilford's trial." *Id.* The government points out that the investigating agents were informed by AT&T of Hayes's new cell phone number before the use of the cell-site simulator. Therefore, according to the government, "use of the cell-site simulator did not result in the discovery of any new information." *Id.* And, because the use of the cell-site simulator did not include any calls to or from Wilford, the use of the cell-site simulator "had no impact on this case." *Id.*

I am persuaded by the government's arguments.

**Conclusion**

For the reasons set forth above, I find no merit in Wilford's Motion to Dismiss or his Motion for New Trial.  Therefore, I shall deny these motions.  An Order follows.


Date:   February 26, 2016                              _____/s/_____

Ellen L. Hollander
United States District Judge