**BRENT EVAN NEWTON**
**ATTORNEY AT LAW**
**19 Treworthy Road**
**Gaithersburg, Maryland 20878**
brentevannewton@gmail.com
**(202) 975-9105**

Hon. Ellen Lipton Hollander
U.S. District Judge
U.S. Courthouse
101 W. Lombard St.
Baltimore, MD 21201
*Filed via CM/ECF*

Re: *United States v. Wilford*, No. 1:11-cr-00258-ELH

Dear Judge Hollander:

I am submitting this letter brief in anticipation of the evidentiary hearing scheduled for Friday, December 20, 2024, at 10:00 a.m. I also am attaching as exhibits the three "informal" Fourth Circuit briefs filed by the parties in *United States v. Wilford*, No. No. 22-6793 (4th Cir.).

**Mr. Wilford's Claim of Ineffective Assistance of Counsel**

Mr. Wilford has alleged that his trial counsel, William Purpura, unreasonably advised Mr. Wilford that the Fourth Amendment claims raised in three pretrial motions to suppress filed by Mr. Purpura[1] had a good chance of prevailing – at least on appeal – and that Mr. Wilford turned down favorable plea-bargain offers and later went to trial in view of that unreasonable advice. In its 2022 order denying § 2255 relief, this Court held that an evidentiary hearing was not required on this claim

---

[1] Those three motions – an original pretrial motion to suppress evidence and two supplemental pretrial motions to suppress – are ECF No. 92 (filed Mar. 9, 2012); ECF No. 97 (filed April 3, 2012); and ECF No. 160 (filed Nov. 12, 2012).

because, although the Fourth Amendment arguments made by Mr. Purpura lacked merit,[2] he did not perform deficiently in filing the pretrial motions:

> [A] [pretrial suppression] claim must be evaluated in light of "the strength of case law as it existed at the time of allegedly deficient representation," [*United States v.* ]*Palacios*, 982 F.3d [920,] 924 [(4th Cir. 2020)], and "avoid the distorting effects of hindsight." [*United States v.*] *Morris*, 917 F.3d [818,] 823 [(4th Cir. 2019)]. To the extent that Wilford contends that, to render effective assistance, Purpura was required to advise defendant that the suppression motions "lacked merit and stood very little chance of prevailing" (ECF 661, ¶ 5), his claim is unfounded.

ECF No. 678, at 50.

This Court alternatively that Mr. Wilford did not establish "prejudice":

> In any event, Wilford has not satisfied *Strickland*'s prejudice prong; that is, he has not shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In Wilford's Declaration (ECF 661-1), submitted with the Second Supplement, he asserts that had Purpura described the suppression motions as having very little chance of success, he would have taken the government's plea offer. But, such a conclusory, self-serving, and post hoc assertion, reflected nowhere else in the record, does not suffice.

ECF No. 678, at 50.

In vacating this Court's ruling, the Fourth Circuit held that an evidentiary hearing is required on Mr. Wilford's ineffective-assistance claim:

> [G]iven the existing law at the time, we conclude that it would have been unreasonable to characterize the suppression motion – which challenged law enforcement's use of GPS tracking and cell phone

---

[2] This Court rejected the Fourth Amendment claims before trial in a published decision. *United States v. Wilford*, 961 F. Supp. 2d 740 (D. Md. 2013), aff'd, 689 Fed. App'x 727 (4th Cir. 2017).

location data – as having a "good chance" of success. *See United States v. Stephens*, 764 F.3d 327, 335-38 (4th Cir. 2014) (holding that good faith exception to the exclusionary rule applies to certain evidence obtained through warrantless use of GPS devices prior to relevant changes in Fourth Amendment jurisprudence). Moreover, the plea deal set forth a sentence of around eight years, whereas Wilford was sentenced to a much lengthier term of imprisonment following trial. Accordingly, we conclude that Wilford presented a colorable claim that counsel's representation during the plea negotiations was both deficient and prejudicial.

*United States v. Wilford*, No. 22-6793, 2024 WL 3825212, at *1 (4th Cir. Aug. 15, 2024).

The Fourth Circuit's decision sets forth the legal standard governing Mr. Wilford's claim:

To succeed on his claim of ineffective assistance of counsel, Wilford was required to show that (1) his counsel's performance was constitutionally deficient and (2) he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the performance prong, Wilford had to "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the prejudice prong, Wilford was required to demonstrate a reasonable probability "that he would have accepted a plea, that the court would have approved its terms, and that the resulting conviction or sentence would have been less severe than that actually imposed." [*United States v.*] *Mayhew*, 995 F.3d [171,] 177 [(4th Cir. 2021)].

*Wilford*, 2024 WL 3825212, at *1.

**The Specific Issues to Be Litigated at the Evidentiary Hearing**

At the hearing, Mr. Wilford intends to prove that Mr. Purpura advised him that the Fourth Amendment claims raised in the pretrial motions had a good chance of prevailing, at least on appeal. Mr. Wilford will rely not only on his own testimony

3

at the hearing but also on statements made by him and Mr. Purpura on the record over a decade ago.

At the July 3, 2013 attorney-inquiry hearing, which occurred after this Court had denied the pretrial motions but before the jury trial began, Mr. Purpura stated that the government previously had offered Mr. Wilford two plea bargains – one offer below ten years of imprisonment and a second one "somewhere under 15 years" (together with the return of some of the property and money that the government had seized from Wilford when he was arrested). ECF No. 725, at 6. Mr. Purpura further stated that Mr. Wilford turned down the offers because "[h]e was very concerned about the [warrantless] GPS" tracking used by agents in this case. *Id.* According to Mr. Purpura, after Mr. Wilford was arrested on made his initial appearance on the charges in September 2012, the government did not disclose the agents' GPS tracking but later disclosed that GPS tracking had been used. *Id.* Mr. Purpura noted that "[w]e then litigated the GPS issues and other [Fourth Amendment] issues." *Id.*[3]

At that same attorney-inquiry hearing, Mr. Purpura also stated that he and a co-counsel "felt there were issues [worth litigating in the motion to suppress], but we felt again, we would probably come out on the wrong side *at least on this level* [i.e., in the district court]" and that it was a "crap shoot when you're [looking at] the amount of time that [Mr. Wilford was] facing" if convicted at trial. *Id.* at 7 (emphasis added). Mr. Purpura also stated that, based on this Court's denial of the motions to suppress and the government's filing a § 851 information alleging one of Mr. Wilford's prior drug convictions, "[m]y advice [to Mr. Wilford] would be . . . that it's not worth it to preserve an appellate issue [by going to trial] when you face . . . at the very minimum [a mandatory sentence of] 20 years." *Id.* at 9.

Subsequently, on the day that the jury trial began in late 2013, Mr. Purpura stated:

---

[3] The record reflects that the government disclosed the GPS data in November 2012 but Mr. Purpura did not access that data until January 2013. *See* ECF No. 171, at 1 (Mr. Purpura's Motion to Withdraw Request for GPS Data).

Your Honor, there was one written plea negotiation, which Mr. Sippel just outlined. That is correct. It was a, for a plea under, which could have resulted under the mandatory minimum. My recollection was in the eight-year area, which I discussed with my client. In addition, that plea also called for the return of certain assets as well. So that resolved the asset issue with a return of some designated assets. That plea was reviewed with Mr. Wilford. He had a copy of it. It's been rejected by Mr. Wilford. At that time it was rejected. There has been really no substantive plea negotiations since then. At Mr. Wilford's request, I just recently, before start of trial, offered a resolution, which was rejected by the government. It wasn't the government suggested. It was defense, Mr. Wilford suggested it. That's it.

ECF No. 308, at 14.

At a pretrial hearing a month before the jury trial began, Mr. Purpura acknowledged that Mr. Wilford's decision to go to trial was motivated by his desire to preserve the Fourth Amendment issues for appeal to the Fourth Circuit. *See* District Court ECF No. 324, at 8 ("[A]s I know, as my client knows, *his trial is with the motions* and what we have here versus what we're going to face coming up in December. *So for appellate reasons*, for all the reasons we've tried to, and he has, he's been diligent in looking at every avenue in this particular case.") (emphasis added).

At a post-trial attorney-inquiry hearing, on February 18, 2014, Mr. Purpura explicitly stated what he previously had implied at the first attorney-inquiry hearing – namely, his belief that "the GPS issue" had the potential of being successful on appeal to the Fourth Circuit:

> . . . [Mr. Wilford's] facing 20 to life in this case and he believes strongly that his motions would be successful and hopefully maybe on appeal they will be. . . . I contacted Joshua Treem from Brown, Goldstein & Levy and asked if they would take this case [for the direct appeal] as a CJA appointment as a favor to the Court because *I said there's some issues in this case and particularly the GPS issue which I thought was an interesting issue. It may be a successful issue [on appeal]*.

ECF No. 726, at 3, 15 (emphasis added).

At the subsequent sentencing hearing, Mr. Wilford stated that: "[T]hroughout the whole process . . . I wasn't able to plead [guilty to the charges] in a sense *to be able to preserve my Fourth Amendment issues or any other issues* [for appeal]. So I was forced to have to go to trial behind all of this." District Court ECF No. 369, at 166; *see also id.* at 169 ("There was no plea [offer] on the table for me to accept responsibility *and preserve my rights* [for an appeal].") (emphasis added).

**The Objectively Meritless Fourth Amendment Claims**

The motions to suppress that Mr. Purpura filed were primary based on the Supreme Court's then-recent decision in *United States v. Jones*, 565 U.S. 400 (2012). The motions sought to suppress incriminating information learned by agents using warrantless GPS tracking devices that permitted the agents to monitor Mr. Wilford and his alleged conspirators in their automobiles. *See* District Court ECF No. 92, at 1-8; *see also* District Court ECF No. 160 (supplemental motion), at 2 ("[T]he primary issue in this case is the extensive use of warrantless Global Positioning System (GPS) units. Essentially, the entire investigation involving Mr. Wilford commenced with and flowed from this improperly employed technique."). In addition, Mr. Purpura's motion raised both a distinct Fourth Amendment challenge to evidence obtained through "pinging" of Mr. Wilford's cellular telephone (authorized by a state court's order pursuant to a Maryland statute) and also a related issue under *Franks v. Delaware*, 438 U.S. 154 (1978). *See* District Court ECF No. 97.

In its response to Mr. Purpura's motion to suppress, the government not only relied on the good-faith exception but also relied on the "inevitable discovery" and "independent source" doctrines – based on the fact that "the bulk of evidence accumulated against Wilford and his co-conspirators to support probable cause for search warrants was gathered distinctly and independently from the use of the GPS

device on Wilford's vehicle."  District Court ECF No. 165, at 38-39.[4]  This Court's order denying the motion to suppress based on the good-faith exception alternatively rested on application of those two doctrines:

> [L]aw enforcement authorities reasonably relied on a comprehensive body of what was regarded as settled law, including Maryland State appellate precedent, authorizing warrantless GPS tracking. . . .  And, even in the absence of the good faith exception, the doctrines of inevitable discovery and independent source apply. . . .

> [E]ven if the good faith exception were not applicable to GPS tracking, alternative and independent means of investigation enabled law enforcement to conduct at least some, if not all, of the surveillance on Wilford that is at issue. Under the inevitable discovery and independent source doctrines, suppression of evidence derived from GPS tracking is not required.

ECF No. 205, at 29, 43.[9]  This Court also held that: (1) Mr. Purpura's claim that the law enforcement agents violated a state court statute (and also the Fourth Amendment) in "pinging" Mr. Wilford's cell phone lacked merit; and (2) Mr.

---

[4] At the January 2013 hearing on the motions to suppress, the following relevant exchange occurred:

> THE COURT: . . . So if you were to prevail, what would actually be suppressed?  Then there's the whole argument of independent source.

> MR. PURPURA:  It is.  There's a lot of time periods, a lot of observations.  And we will be as clear as we can.

> MR. SIPPEL: And I'm actually looking forward to that, Your Honor, because when I sat down with my agents and we went through it, we concluded that, *given all these alternative theories, that absolutely nothing would be suppressed unless you suppress all GPS data, all GPS pinging, somehow found standing for Mr. Wilford to challenge his codefendant's phones and pinging on their, or GPS pinging on their cars*.

ECF No. 174, at 133 (emphasis added).

Wilford lacked "standing" to challenge the "fruits" of the allegedly unconstitutional searches of his coconspirators.  ECF No. 205, at 25-27, 48-54.[5]

If a criminal defendant's attorney advises his or her client that a pretrial suppression issue has potential merit on appeal (and could have the effect of not only reversing the defendant's convictions but also suppressing the incriminating evidence in a manner that effectively would prevent a retrial), such advice certainly could lead a rational defendant to reject an otherwise favorable plea offer and proceed to trial – because, by accepting the plea offer, the defendant would waive his right to appeal that issue.  *See Haring v. Prosise*, 462 U.S. 306, 320 (1983) ("[A] guilty plea results in the defendant's loss of any meaningful opportunity he might otherwise have had to challenge the admissibility of evidence obtained in violation of the Fourth Amendment.").  At the sentencing hearing, Mr. Wilford specifically stated that he felt forced to go to trial in this case in order to preserve what he considered to be meritorious Fourth Amendment issues for appeal.  *See* ECF No. 369, at 166, 169.

The key issue in Mr. Wilford's case is whether Mr. Purpura acted in an objectively reasonable manner, based on the existing appellate precedent, when he advised Mr. Wilford that the Fourth Amendment issues (in particular, the primary GPS issue) had potential merit on appeal (and would result in suppression of a significant amount of the incriminating evidence in this case).  The Supreme Court's decision in *Davis v. United States*, 564 U.S. 229 (2011), made it clear that the good-faith exception foreclosed suppression of evidence under the Fourth Amendment exclusionary rule when governing precedent in effect at the time of an unconstitutional search had authorized that search (even if a subsequently decided Supreme Court decision demonstrated that the search was unconstitutional).  At the time that the law enforcement officers used the warrantless GPS tracking of Mr. Wilford to obtain incriminating information (before *Jones*), there was a solid wall of governing precedent – Supreme Court precedent, Fourth Circuit precedent, and

---

[5] This Court also rejected a claim under. *Franks v. Delaware*, 438 U.S. 154 (1978), concerning the state court warrant application (that only related to the cell phone "pinging" evidence).  ECF No. 205, at 57-61.

Maryland state court precedent[6] – that would have led a reasonable law enforcement officer in Maryland to believe that the warrantless installation of a GPS device to track a car on the public roads was constitutional.[12]  In addition, as this Court noted in its order denying Mr. Purpura's motions to suppress, the Advisory Committee Notes following Federal Rule of Criminal Procedure 41, which governs the issuance of a warrant in a federal criminal proceeding, cited *Knotts* for the proposition that warrantless GPS tracking was constitutional, except in areas reasonably considered private (such as homes, as opposed to automobiles on the public roads).  ECF No. 205, at 36-37.

*Jones* – which held that the warrantless placement of a GPS tracker on the defendant's car was a "trespass of chattels" that violated the Fourth Amendment even if it did not violate the defendant's "reasonable expectation of privacy" – was a watershed Supreme Court 5-4 decision that resurrected an apparently moribund Fourth Amendment theory of "trespass."  *See, e.g.*, *Cardwell*, 417 U.S. at 591 (holding that warrantless taking of paint scrapings from the exterior of a vehicle – which clearly constituted a "trespass of chattels" within the meaning of *Jones* – did not constitute an unlawful "search"); *see also United States v. Richmond*, 915 F.3d 352, 357 (5th Cir. 2019) ("Lower courts recognized *Jones* as a sea change.") (citing cases).

Such a dismal legal landscape existing for Mr. Wilford in 2012 and 2013 on the good-faith exception issue offered no support for Mr. Purpura's advice that Mr.

---

[6] *See United States v. Knotts*, 460 U.S. 276 (1983) (holding that warrantless use of electronic tracking device to monitor the defendant's car's movement on the public roads was not a Fourth Amendment violation); *Cardwell v. Lewis*, 417 U.S. 583, 591 (1974) (plurality) (warrantless removal of paint chipping from defendant's car did not violate the Fourth Amendment); *United States v. Bellina*, 665 F.2d 1335, 1341 (4th Cir. 1981) ("Because of this diminished expectation of privacy in an automobile, the courts have not merely approved observations into the interior of cars by officers located at a point where they legally had a right to be but have gone further and tolerated intrusions involving automobiles that would have been found unconstitutional in other contexts. Thus, in *Cardwell* the Supreme Court found permissible under the Amendment the removal of paint scrapings from the exterior of a car . . . and in *United States v. Michael*, [645 F.2d 252, 257 (5th Cir. 1981) (en banc),] the Court held an intrusion into a car to install a beeper to be reasonable under the Amendment."); *Stone v. State*, 941 A.2d 1238, 1249-50 (2008) (Md. App. 2008) (relying on *Knotts* to reject a Fourth Amendment challenge to the warrantless installation of a GPS tracking device on the defendant's car), *overruled by Jones*, *supra.*

Wilford stood a good chance of prevailing on appeal.  Therefore, such advice, which caused Mr. Wilford to reject favorable plea-bargain offers and go to trial to preserve what he believed were meritorious Fourth Amendment issues, was objectively "deficient" under *Strickland*.

In addition, Mr. Purpura's opinion about the viability of the GPS issue was significantly affected by his fundamentally mistaken belief that the good-faith exception considers a law enforcement officer's *subjective* knowledge of extant appellate precedent at the time of a warrantless search – in particular, the DEA agents' subjective awareness of the D.C. Circuit's decision in *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), at the time of the warrantless GPS monitoring of Mr. Wilford's vehicles.  *See* ECF No. 218 (March 8, 2013 suppression hearing), at 42-43, 48 (Mr. Purpura stated: "The only argument I have left . . . is the use of the GPS and the *Davis* good faith [exception]. . . .  [C]learly, what the agent said to this Court was yes, we discussed [*Maynard*], we were aware . . . of the decision of the D.C. Circuit. . . .  [W]e are looking into the agent's mind at this point for good faith.").  Mr. Purpura was clearly influenced to pursue the GPS-related Fourth Amendment claims based on his mistaken belief that the agents' subjective awareness of the D.C. Circuit's decision in *Maynard* provided a basis to circumvent the good-faith exception.

The good-faith exception is assessed entirely from an *objective* standpoint – i.e., what a reasonably trained officer would have believed he or she was authorized to search without a warrant in view of the then-governing appellate precedent.  *See United States v. Leon*, 468 U.S. 897, 919 n.20 (1984) ("We emphasize that the standard of reasonableness we adopt [for the good-faith exception] is an objective one."); *United States v. Martin*, 807 F.3d 842, 848-49 (7th Cir. 2015) ("The standard set forth in [the Supreme Court's 2011 decision in] *Davis* is an objective one that does not invite federal courts on an expedition into the minds of police officers[,] a foray that would produce a grave and fruitless misallocation of judicial resources. . . .  Rather, it asks if the searches were conducted in objectively reasonable reliance on binding appellate precedent.") (citations and internal quotations omitted); *United States v. George*, 971 F.2d 1113, 1123 (4th Cir. 1992) ("The *Leon* Court expressly eschew[ed] inquiries into the subjective beliefs of law enforcement officers who seize evidence [in violation of the Fourth Amendment] . . . .  The district court

therefore was foreclosed from inquiring into the officer's actual state of mind at the time the challenged action was taken.") (citation and internal quotation marks omitted).

Finally, assuming *arguendo* that Mr. Purpura did not perform deficiently concerning the GPS issue/good-faith exception, his belief that the GPS-related Fourth Amendment claims had merit was objectively unreasonable in view of the separate independent source and inevitable discovery exceptions to the Fourth Amendment's exclusionary rule – exceptions alternatively invoked by the government and applied by this Court in denying Mr. Purpura's motions to suppress. Notably, Mr. Purpura did not address those exceptions after the government raised them in its response to his motions to suppress (ECF No. 165, filed December 21, 2012). (Mr. Purpura did not file a reply to that response before the two suppression hearings in early 2013.) At the March 2013 hearing, this Court noted: "If I thought you were right, much of the evidence would seem to me to have been subject to inevitable discovery." ECF No. 182, at 14. This Court then directly asked Mr. Purpura: "[T]here is a lot [of evidence] that wouldn't be affected, I guess is another way of putting it, that ***even if you win, where does that get you***?" ECF No. 182, at 12, 14 (emphasis added). Mr. Purpura obviously did not have an answer to this Court's question that could salvage his meritless Fourth Amendment theories. *Id.* at 14.[7]

The decision of whether to file a pretrial motion is a defense counsel's to make – not the client's. *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (whether to file a pretrial motion in a criminal case is a strategic decision within the attorney's, not the client's, discretion). Exercising his independent professional judgment, Mr. Purpura should have refused to file the motions – which entirely lacked merit for the

---

[7] Mr. Purpura responded as follows:

> MR. PURPURA: I agree. I think a recent Fourth Circuit case didn't have to reach this issue because it basically – I don't know the name of the case. It just came out in the past week. I apologize. It really doesn't affect us. But the Fourth Circuit basically said we don't have to reach this issue, but if we did have to reach the issue, there would be nothing to suppress anyway.

ECF No. 205, at 14.

reasons set forth above – and clearly and unequivocally advised Mr. Wilford why the Fourth Amendment issues lacked merit and stood no realistic chance of prevailing on appeal. Such advise would have permitted Mr. Wilford to make a meaningful decision about whether to accept the plea offers made by the prosecutor.

**Mr. Wilford Was "Prejudiced" by Mr. Purpura's Deficient Performance**

As the Fourth Circuit held, "Wilford [must] demonstrate a reasonable probability 'that he would have accepted a plea, that the court would have approved its terms, and that the resulting conviction or sentence would have been less severe than that actually imposed.'" [*United States v.] Mayhew*, 995 F.3d [171,] 177 [(4th Cir. 2021)]." *Wilford*, 2024 WL 3825212, at *1. A "reasonable probability" is *less* than a showing by a preponderance of the evidence. *Strickland*, 466 U.S. at 694; *United States v. Dominguez Benitez*, 542 U.S. 74, 82 n.9 (2004) (same).

In assessing whether *Strickland* prejudice exists, this Court must engage in a "counterfactual" inquiry. *Mayfield v. United States*, 955 F.3d 707, 713 (8th Cir. 2020) (explaining that the prejudice inquiry requires district courts "to make findings about what likely would have transpired in . . . a counterfactual scenario" where counsel reasonably advised the defendant); *United States v. Dominguez*, 998 F.3d 1094, 1120 (10th Cir. 2021) (holding that "*Strickland's* prejudice analysis involves a 'counterfactual' inquiry that hinges on counsel's alleged ineffective representation – that is, the inquiry turns on whether, but for such ineffective representation, there is a reasonable probability that the outcome of the proceeding would have been different").

In engaging in such a counterfactual inquiry, this Court must ask the following question: is there a reasonable probability that, if Mr. Purpura, at the outset of representing Mr. Wilford, had correctly assessed the legal viability of a potential motion to suppress the GPS evidence and cell phone "pinging" evidence under the Fourth Amendment and sufficiently conveyed to Mr. Wilford clear and unequivocal advice that the such a motion was ***extremely unlikely*** to prevail, would Mr. Wilford still have rejected a plea-bargain for a fraction of the prison time that he ultimately received after losing at trial?

The current record establishes that there is a reasonable probability that Mr. Wilford would have accepted such a plea bargain. Significantly, in two prior federal cases, Mr. Wilford pleaded guilty pursuant to plea bargains. Presentence Report ¶¶ 49-50). He clearly did not have a history of unreasonably rejecting favorable plea bargains. Furthermore, this Court also should consider Mr. Wilford's statement at the sentencing hearing that he had been amenable to a plea bargain that would have permitted him to appeal the Fourth Amendment issues (an offer rejected by the prosecutor) and felt compelled to go to trial to preserve what he believed were meritorious Fourth Amendment issues. *See* ECF No. 369, at 163-66. That is, he proceeded to trial on a fundamentally mistaken premise (based on Mr. Purpura's unreasonable advice) – that Mr. Wilford had a good chance of prevailing on the Fourth Amendment issues on appeal. And we know from Mr. Purpura's contemporaneous statements that he, like Mr. Wilford, believed that the Fourth Amendment issues had a realistic potential of prevailing on appeal. *See* ECF No. 726, at 3, 15 (stating his belief that "particularly the GPS issue . . . was an interesting issue" and "[i]t may be a successful issue [on appeal]").

When a criminal defendant hears from his counsel that, despite losing a Fourth Amendment issue in the district court, the issue may win on appeal – and, by that juncture, the chance for a favorable plea bargain has been lost[8] – it is understandable why the defendant would proceed to trial in order to preserve the issue for appeal (particularly when a successful appeal could suppress the evidence necessary for a retrial to occur). Although by the time of the first attorney-inquiry hearing in July 2013 – *after* this Court had denied the motions to suppress – Mr. Purpura advised Mr. Wilford that "because of the circumstances of this particular case . . . it's not worth it to preserve an appellate issue [by going to trial] when you face . . . at the very minimum [a mandatory sentence of] 20 years," ECF No. 725, at 9, it was too

---

[8] It is important to understand that, by the time Mr. Wilford decided to go to trial, the prosecution was no longer willing to offer him a plea bargain. *See* ECF No. 308, at 14 (Mr. Purpura's statement on the first day of trial: "There has been really no substantive plea negotiations since [Mr. Wilford rejected the plea offer during the early phase of the case.] At Mr. Wilford's request, I just recently, before start of trial, offered a resolution, which was rejected by the government. It wasn't the government suggested. It was defense, Mr. Wilford suggested it.").

late by that juncture.  Mr. Purpura should have strongly advised Mr. Wilford not to file the meritless motions to suppress **17 months earlier** (in March 2012, before the initial motion to suppress was filed, *see* ECF No. 92).

If, in early 2012, Mr. Purpura had *clearly and unequivocally* advised Mr. Wilford that, considering the insurmountable combination of the good-faith exception, the inevitable discovery/independent source exceptions, and the "standing" issue, he stood no realistic chance of winning in the district court or on appeal, there is a reasonable probability that Mr. Wilford would have accepted a plea bargain.

The proper remedy in this case is to place Mr. Wilford in the position that he would have been in if Mr. Purpura had not performed deficiently – i.e., allow Mr. Wilford to accept the plea offer that he rejected based on Mr. Purpura's deficient performance.  *See Lafler v. Cooper*, 566 U.S. 156, 174-75 (2012).

***

Finally, this Court requested that the parties address how the attorney-client privilege will operate at the upcoming evidentiary hearing (concerning communications between Mr. Wilford and Mr. Purpura).  Mr. Wilford agrees that he has waived that privilege but only to the extent that such communications relate to the specific ineffective-assistance claim that he has raised.  *See Jordan v. United States*, 552 F. Supp.3d 575, 578 (S.D. W. Va. 2021) (stating that, when a "'habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer'") (quoting *Bittaker v. Woodford*, 331 F.3d 715, 516 (9th Cir. 2003)); *United States v. Pinson*, 584 F.3d 972, 977-78 (10th Cir. 2009) ("[W]hen a habeas petitioner claims ineffective assistance of counsel, he impliedly waives the attorney-client privilege with respect to communications with his attorney necessary to prove or disprove his claim[.]")

Respectfully submitted,

*Brent Evan Newton*

Counsel for Mr. Wilford


## CERTIFICATE OF SERVICE

I certify that, on this 12th day of December, 2024, I served a copy of this document on counsel for the government, AUSA John Sippel, by filing it via this Court's CM/ECF system.

*Brent Evan Newton*

Brent Evan Newton