

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*John W. Sippel, Jr.*
*Assistant United States Attorney*
*John.Sippel@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4807*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*

December 16, 2024

**via ECF**

The Honorable Ellen L. Hollander
United States District Judge
United States Courthouse
101 W. Lombard Street
Baltimore, Maryland 21201

  Re: *United States of America v. Richard Wilford*
     USDC-MD criminal no. ELH-11-0258

Dear Judge Hollander:

  We submit this letter brief on behalf of the United States of America in preparation for the evidentiary hearing before the Court on Friday, December 20, 2024, at 10:00 a.m. Counsel for defendant Wilford submitted previously the appellate briefs filed with the U.S. Court of Appeals for the Fourth Circuit in *United States v. Wilford*, No. 22-6793, to assist the Court in preparation for the hearing.

## Procedural Background

  This Court is well-familiar with the long, complex background of this case, so this section will be brief. Wilford was charged, along with five co-defendants, with conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. ECF no. 59.

  After fleeing to California to avoid arrest, Wilford returned to Baltimore and was arrested on September 16, 2011. He had his initial appearance in the United States District Court for the District of Maryland on that same day. ECF no. 64.

  During the prosecution phase of the case, Wilford's trial counsel, William Purpura, Esquire, submitted numerous pretrial motions, which were fully briefed by the parties. Motions hearings on the pretrial motions were held in January, March, and November 2013. Wilford's pretrial motions to suppress were denied by this Court on June 7, 2013, for reasons described in a detailed published opinion. *See United States v. Wilford*, 961 F. Supp. 2d 740 (D. Md. 2013).

Thereafter, Wilford proceeded to trial in December 2013, and was found guilty by a jury. Wilford was sentenced in August 2014, receiving a sentence of 340 months' imprisonment, followed by ten years of supervised release. ECF no. 354.

Wilford appealed to the Fourth Circuit, which affirmed the conviction and judgment against him. *See United States v. Wilford*, 689 Fed. App'x 727 (4th Cir. 2017). He then filed a petition for writ of certiorari to the United States Supreme Court, which was denied on June 28, 2018. *See Wilford v. United States*, 138 S. Ct. 2707 (2018).

On June 28, 2019, Wilford, through counsel, filed a motion to vacate pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel, among other things. ECF no. 546. Wilford also filed a motion for reduction in sentence and/or compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF no. 595. On July 1, 2022, the Court denied Wilford's § 2255 motion and granted, in part, Wilford's motion for compassionate release, and reduced Wilford's sentence from 340 months to 240 months. *See United States v. Wilford*, 2022 WL 2392237 (D. Md., July 1, 2022).

Wilford appealed the Court's denial of his § 2255 motion and on July 13, 2022, submitted an informal brief in support of his application for a certificate of appealability. On December 18, 2023, the Fourth Circuit granted a certificate of appealability on the limited issue of whether this Court should have held an evidentiary hearing on one of Wilford's ineffective assistance of counsel claims. In August 2024, the Fourth Circuit dismissed in part and vacated in part Wilford's § 2255 motion, and remanded the case for an evidentiary hearing. *United States v. Wilford*, 2024 WL 3825212 (4th Cir., Aug. 15 2024).

**Wilford's Trial Counsel Was Not Ineffective**
**<u>Because Wilford Never Intended to Plead Guilty</u>**

A petitioner may bring claims of ineffective assistance of counsel under 28 U.S.C. § 2255. *United States v. Martinez,* 136 F.3d 972, 979 (4th Cir. 1998). To evaluate a claim of ineffective assistance of counsel, the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984) applies. In *Strickland*, the Court held that a finding of ineffective assistance of counsel requires a two-prong showing, and Wilford bears the burden of persuasion for both prongs. *Id.* at 687.

To satisfy the first prong, Wilford must show that his trial counsel's performance was deficient. *Id.* In making this showing, the burden is Wilford to establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011); *United States v. Roane*, 378 F.3d 382, 404-05 (4th Cir. 2004)(both quoting *Strickland*, 466 U.S. at 687). "Deficient performance" is not merely below average; rather, counsel's actions must fall below objective standards of reasonableness. *Id.* at 687-88.

In assessing the reasonableness of an attorney's performance, judicial scrutiny must be "highly deferential" to tactical decisions and the court must filter from its analysis the "distorting

effects of hindsight." *Id.* at 689 (stating that, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."). The core question under *Strickland* is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. As such, the first prong of *Strickland* necessitates a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered "sound trial strategy." *Strickland*, 466 U.S. at 689.

Furthermore, the question of whether an attorney's representation was unreasonable and thus amounted to ineffective assistance must be determined from the perspective of trial counsel at the time that the error is alleged to have occurred. *See Id*. at 689-90 (stating that, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time").

Under the second *Strickland* prong, Wilford must show that prejudice resulted from his trial counsel's deficient performance. *Id.* at 692. To establish prejudice, Wilford must show that, in light of the totality of the circumstances and the evidence presented at trial, there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is defined as "a probability sufficient to undermine the confidence of the outcome." *Id*.

Failure to satisfy either prong is fatal to Wilford's claim, so "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S.at 697. Thus, "[i]f [a] defendant cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." *Fields v. Att'y Gen. of Maryland*, 956 F.2d 1290, 1297 (4th Cir. 1992) (citing *Strickland*, 466 U.S. at 697).

Here, Wilford's trial counsel's performance was not deficient because Wilford intended to proceed to trial at all times and never intended to plead guilty. Wilford chose to litigate fully his pretrial motions, even after the motions were denied by this Court and despite his trial counsel's constant advice and recommendation to plead guilty. Wilford had the opportunity to plead guilty prior trial, but followed his own advice to proceed with trial in attempt to preserve issues for appellate review. He gambled and lost, and now attempts to post blame on his trial counsel.

The evidence in the record reveals that Wilford was apprehended in September 2011, after fleeing to California. Prior to his arrest, Wilford's trial counsel attempted to negotiate a plea favorable to Wilford, but Wilford refused to turn himself in and plead guilty. He appeared before United States Magistrate Judge Beth P. Gesner for his initial appearance on September 16, 2011, during which Wilford's counsel indicated that he had a copy of the superseding indictment; the charges and maximum penalties were explained to him; and he indicated that he understood the charges and the maximum penalty.

Voluminous discovery materials were provided to Wilford's trial counsel. Wilford filed numerous pretrial motions, including motions to suppress evidence: "Motion to Suppress Tangible and Derivative Evidence" (ECF no. 92); "Addendum to Motion to Suppress Tangible and Derivative Evidence Pursuant to Federal Rule 12(b)(3) and Request for a *Franks* Hearing" (ECF no. 97); and "Supplemental and Consolidated Motion to Suppress Tangible and Derivative Evidence" (ECF no. 160). On June 7, 2013, this Court issued a memorandum and order (ECF nos. 205 and 206) denying Wilford's motions to suppress. *See United States v. Wilford*, 961 F. Supp. 2d 740 (D. Md. 2013).

Following the denial of Wilford's motions to suppress, an attorney inquiry hearing was held on July 13, 2013. During the hearing, Wilford's trial counsel stated that the Government had offered Wilford two favorable plea offers, but Wilford rejected the offers because Wilford was concerned about the warrantless GPS tracking used by agents during the investigation into Wilford and his co-conspirators extensive drug-trafficking. ECF no. 725, at 6. Based on the denial of Wilford's motions to suppress, Wilford's trial counsel also stated that "[t]here's been advice given, advice which still is -- and everyone has a right and that's one right that Mr. Wilford has, all defendants the right to go to trial and that's his right to go to trial. My advice would be because of the circumstances of this particular case that it's not worth it to preserve an appellate issue when you face such at the very minimum, 20 years." *Id*. at 9. Despite this advice by his counsel to plead guilty given the high risks, Wilford refused to plead guilty and continued towards trial.

Following the attorney inquiry hearing, Wilford's counsel submitted an additional pretrial motion in late July 2013, requesting the district court to reconsider its prior ruling (ECF no. 217). Another motions hearing was held on November 6, 2013, and the Court granted Wilford's motion on a limited issue but found any remaining defense issues "to be without merit" (ECF no. 252 at 10). All of Wilford's pretrial motions were addressed and resolved by the Court more than one month prior to trial, and the record is devoid of any evidence that Wilford intended to plead guilty before the December 2013 trial date.

Wilford proceeded to trial on December 11, 2013. On the first day at trial, the Court conducted a *Lafler* hearing. During the *Lafler* hearing, the following colloquy occurred:

\*     \*     \*

> MR. SIPPEL: Right. Let's do the *Lafler* issue first. Your Honor, I just want to go on the record so it's clear, for whatever purposes in the future, that from the outset of the case Mr. Purpura and I engaged in plea negotiations. We actually began engaging in plea negotiations before Mr. Wilford was actually in custody, without much success. And then, ultimately, I believe it was in April of 2012, Mr. Purpura and I were actually negotiating a plea. The plea was reduced to writing and presented to Mr. Purpura. Your Honor, the plea was a plea such that the Court could have sentenced Mr. Wilford below any mandatory minimum sentence in this case. The plea was, again, was transmitted to Mr. Purpura. And again, for the record, Your Honor, I'd just like to have Mr. Purpura acknowledge that the plea was conveyed to Mr. Wilford and that Mr. Wilford indeed did review the plea with Mr. Purpura.

THE COURT: And is that the only one there ever was?

MR. SIPPEL: Yes, Your Honor. That was the only written plea that was exchanged. There were other plea negotiations, Your Honor, that were very loose. But beyond, beyond April, I don't think we had any kind of substantive plea negotiations. Mr. Purpura can correct me if I'm wrong.

THE COURT: Counsel.

MR. PURPURA: Your Honor, there was one written plea negotiation, which Mr. Sippel just outlined. That is correct. It was a, for a plea under, which could have resulted under the mandatory minimum. My recollection was in the eight-year area, which I discussed with my client. In addition, that plea also called for the return of certain assets as well. So that resolved the asset issue with a return of some designated assets. That plea was reviewed with Mr. Wilford. He had a copy of it. It's been rejected by Mr. Wilford. At that time it was rejected. There has been really no substantive plea negotiations since then. At Mr. Wilford's request, I just recently, before start of trial, offered a resolution, which was rejected by the government. It wasn't the government suggested. It was defense, Mr. Wilford suggested it. That's it.

THE COURT: Okay. Thank you.

MR. SIPPEL: Your Honor, just so, for appeal purposes and other issues down the road, the government, and maybe you're familiar with this, has been asking that the defendant actually acknowledge himself on the record that he did receive a plea and reviewed it with his counsel.

MR. PURPURA: Your Honor, I am not sure that's necessary. Mr. Wilford is sitting here with me right now. If there's anything which I am saying which is incorrect, I'm sure Mr. Wilford would be tugging at my sleeve at this point. He's heard there was a plea offer. He's heard that he's reviewed it with me. And he's sitting here, Your Honor.

THE COURT: Do you have any quarrels, sir, with what has been outlined?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. Thank you.

\* \* \*

(ECF no. 308 at 12-15). During the *Lafler* hearing, Wilford had the opportunity to notify the Court of any issues with plea negotiations or his trial counsel's performance in advising about a plea.

Wilford stated that he did not have any issues. At that point, Wilford could have pleaded guilty, but he chose to proceed to trial against his trial counsel's advice.

On December 18, 2013, the jury found Wilford guilty of conspiracy to distribute five kilograms or more of cocaine. ECF no. 267; ECF no. 268.

In February 2014, Purpura moved to withdraw as Wilford's attorney. ECF no. 285. In his motion, Purpura outlined the actions taken on behalf of Wilford during Wilford's prosecution. Importantly, Purpura wrote about the plea negotiations and Wilford's intentions as to whether to plead guilty or proceed to trial:

> During this time period counsel entered into plea negations with government counsel and obtained a plea (for a third time federal offender) that could have resulted in a favorable sentence and the return of certain specified assets. Mr. Wilford was fully aware if he were convicted at trial his decision not to negotiate a plea agreement would lead to a mandatory minimum sentence of 20 years up to a maximum sentence of life. Mr. Wilford followed his own advice, declined the government's offer and demanded full litigation of all legal issues and a trial.

ECF no. 285 at ¶ 5.

Based on Purpura's representations to the Court, Wilford was aware of the steep penalties associated with a conviction at trial, and Wilford demanded to proceed to trial anyway. It is clear that Purpura advised Wilford to plead guilty and minimize his exposure to a lengthy prison sentence. Purpura's representations to the Court are fully consistent with Wilford's position during the *Lafler* hearing and all times prior to his sentencing in August 2014.

On August 7, 2014, the Court sentenced Wilford to 340 months' imprisonment, followed by ten years of supervised release, based on his two prior federal narcotics-related convictions, as well as the amount of cocaine that was trafficked by Wilford and his co-conspirators. ECF no. 354.

Based on the foregoing, the clear evidence of the record indicates that Wilford's trial counsel consistently and repeatedly advised Wilford to plead guilty, but Wilford refused and insisted on litigating and preserving for appeal the issues pertaining to the warrantless use of GPS trackers.

Moreover, contrary to Wilford's assertions, challenging the issues pertaining to the warrantless use of GPS tracking was not "meritless." As detailed in the Court's memorandum opinion denying Wilford's § 2255 motion, Wilford's suppression motion challenged the Government's collection of evidence obtained from surveillance utilizing GPS tracking devices and court-authorized "pinging" of cellular phones. *See Wilford*, 2022 WL 2392237, *2-3. Wilford's motions relied on the Supreme Court's decision in *United States v. Jones*, 565 U.S. 400 (2012), which ruled that the use of GPS tracking devices on vehicle constitutes a search under the Fourth Amendment, and Wilford maintained that the warrantless use of GPS tracking technology

violated his Fourth Amendment rights. *Id*. at 2.  The Supreme Court's decision in *Jones* was issued on January 23, 2012, and Wilford's motions to suppress evidence based on the warrantless use of GPS tracking devices were filed on March 9, 2012, and November 12, 2012.  ECF no. 92; ECF no. 160.  Wilford's arguments were far from frivolous, as noted by this Court:

> ….the Fourth Circuit had not opined on the legality of warrantless GPS tracking devices at the time of the Hayes DTO investigation. And, I recognize that other federal courts have, since *Jones*, determined that the good faith exception does not apply in the absence of binding federal appellate precedent....

*Id*. at 25.  And, as noted by the parties in their briefing to the Court, the courts were split in the application of the good faith exception following the *Jones* decision.  ECF no. 92; ECF no. 160; ECF no. 165; ECF no. 181.[1]

In his filings, Wilford persists with his argument that he did not plead guilty because Purpura allegedly advised him that he had a "good chance" to prevail on his suppression motions.  Again, the record contradicts Wilford's arguments.  In Purpura's motion to withdraw, Purpura explained that

> [p]rior to trial, counsel reviewed in excess of 1000 pages of discovery with Mr. Wilford during numerous visits with him at CDF. Counsel also reviewed with Mr. Wilford the applicable law on all relevant and non-relevant legal issues that were identified. To further protect Mr. Wilford's interests and ensure that he was clearly informed of the law on numerous legal issues, counsel retained the services of Marta Kahn Esq., who is an expert on legal writing and research to further educate Mr. Wilford on the state of the law. In addition to the assistance of Ms. Kahn, counsel employed the assistance of two separate law clerks to conduct research and aid in drafting motions, and to respond to daily letters by Mr. Wilford over a two-year period.

ECF no. 284 at ¶ 4.  Purpura further explained that

> Counsel filed numerous motions and comprehensive briefs, including briefing on issues that Mr. Wilford specifically requested counsel raise. Counsel met with Mr. Wilford prior to all motions being filed and prior to argument on these motions, and gave Mr. Wilford copies of all motions and memoranda filed by the defense and the government.

---

[1] In its remand opinion, the Fourth Circuit cites to *United States v. Stephens*, 764 F.3d 327, 335-38 (4th Cir. 2014) in support of its argument that the good faith exception to the exclusionary rule undermined the suggestion that Wilford's suppression motions had a "'good chance' of success." *Wilford*, 2024 WL 3825212, * 1.  The Fourth Circuit's analysis, however, fails to acknowledge that the *Stephens* case was decided *after* this Court addressed Wilford's motions to suppress and while the courts were clearly split on the application of the good faith exception to the warrantless use of GPS tracking.

*Id*. at ¶ 6. As noted by this Court, Wilford's statements during the sentencing proceeding also undercut Wilford's conclusory, self-serving statements in his affidavit. When Wilford learned of the Court's ruling on his suppression motions, an attorney inquiry hearing was held. During that hearing, Purpura stated that he advised Wilford to plead guilty rather than risk a trial conviction to preserve issues on appeal. Despite this advice, Wilford did not plead guilty; rather he insisted that Purpura file an additional motion, asking the Court to reconsider the denial of his suppression motions. In addition, Wilford indicated at sentencing that he did not want to agree to a plea that did not allow him to "preserve [his] Fourth Amendment issues" for appeal. ECF no. 369 at 166. The Government, however, would not agree to a conditional plea, so Wilford steamrolled into trial. As highlighted by the Court, "the apparent importance Wilford assigned to preserving these issues on appeal during the plea bargaining suggests he still believed they had merit, rather than that he realized the contentions were meritless." *Wilford*, 2022 WL 2392237 at 27. Moreover, as noted by the Court in its memorandum denying his § 2255 motion,

> Wilford's years of voluminous filings hardly suggest a chastened defendant who belatedly realized that his Fourth Amendment arguments had little merit, and would have taken the government's plea offer had his attorney only told him that the motions were baseless. To the contrary, if Wilford's submissions leave any impression, it is of a defendant who continues to be absolutely convinced by the truth of his arguments, and of the injustice that has been inflicted upon him.

*Wilford*, 2022 WL 2392237, *28.

All of the facts above undermine Wilford's arguments that he would have pleaded guilty and reflect his intention to litigate fully all Fourth Amendment issues and proceed to trial, despite his counsel's advice to plead guilty. Wilford's trial counsel's performance did not fall below objective standards of reasonableness, as he litigated the relevant issues, weighed and reviewed the chances of success with Wilford, and consistently advised Wilford to minimize his exposure and plead guilty. Wilford ignored his trial counsel's advice and proceeded to trial. Accordingly, Wilford cannot establish the first prong of *Strickland*, and his claim of ineffective assistance of counsel inherently fails.

Even if Wilford could establish that Purpura's conduct was deficient, Wilford cannot establish prejudice because he has not shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As discussed above, the record clearly establishes that Wilford intended to proceed to trial, regardless of his trial counsel's advice. Throughout the prosecution, Wilford's trial counsel consistently advised him to plead guilty, but Wilford continued to press forward with litigating and preserving for appeal the issues pertaining to the warrantless use of GPS trackers. Even after the Court denied Wilford's suppression motions and related motion for reconsideration, Wilford continued his fight, rejecting his trial counsel's advice to plead guilty and minimize his sentence in light of the strong evidence against him and likelihood of a guilty verdict by a federal jury. Thus, Wilford cannot establish prejudice because he refused to follow his counsel's advice and plead guilty prior to trial.

Based on the foregoing, the Court should deny Wilford's ineffective assistance of counsel claim contained his motion filed pursuant to 28 U.S.C. § 2255.

Very truly yours,

Erek L. Barron
United States Attorney

_____
John W. Sippel, Jr.
Assistant United States Attorney

cc: Brent Newton, Esquire (via ECF)