BRENT EVAN NEWTON
ATTORNEY AT LAW
19 Treworthy Road
Gaithersburg, Maryland 20878
brentevannewton@gmail.com
(202) 975-9105

January 11, 2025

Hon. Ellen Lipton Hollander
U.S. District Judge
U.S. Courthouse
101 W. Lombard St.
Baltimore, MD 21201
*Filed via CM/ECF*

Re: *United States v. Wilford*, No. 1:11-cr-00258-ELH

Dear Judge Hollander:

I submit this reply to the letter brief filed by the government on January 10, 2025.

### 1. The government's brief mischaracterizes Mr. Purpura's knowledge of the nature and extent of the GPS-tracking and "pinging" data in 2012.

A fundamental issue in this case is whether Mr. Purpura had a sufficient factual and legal understanding of the GPS-tracking and "pinging" evidence at the time that the government made the plea-bargain offer *in the Spring of 2012*. Remarkably, the government claims that Mr. Purpura had a "full understanding" of the nature and extent of the GPS and "pinging" data when he filed the original motion to suppress in March 2012 and the supplemental motion in April 2012 – at the time that Mr. Purpura and AUSA Sippel were engaging in plea-bargain

1

negotiations. *See* Government's Letter Brief, at 8, 10. The record from 2012 undermines that assertion.

Inexplicably, Mr. Purpura did not request that AUSA Sippel provide discovery about the GPS-tracking and "pinging" of Mr. Wilford's movements until *after* Mr. Purpura had filed the first two motions to suppress in March and April 2012, and Mr. Purpura did not review that discovery until *after* he filed the third motion to suppress on November 12, 2012. ECF No. 173, at 2 (AUSA Sippel's 1/14/2013 response to Mr. Purpura's discovery request) ("On October 17, 2012, counsel for Wilford requested that the Government produce materials and data concerning the use of all GPS trackers and pinging data from cellular telephones (Docket no. 157). . . . On November 26, 2012, Government counsel provided additional materials to Wilford's counsel, including a disk that contained the requested GPS/pinging data . . . .").

When Mr. Purpura filed the three motions to suppress, he based the Fourth Amendment claim on speculation and inferences – not on specific evidence – about the nature and extent of the GPS-tracking and "pinging." In the original motion, Mr. Purpura stated:

> Based on the discovery received to date and conversations with the government, counsel is aware that a non-Court authorized GPS device was installed upon a vehicle used by codefendant, Lawrence Hayes. The government has confirmed that at least the initial observations of Mr. Hayes and Mr. Wilford on October 8, 2010 were the product of this GPS tracking. Based on the timing of the post October 8, 2010 observations, Mr. Wilford *alleges* that the law enforcement continued to use GPS tracking. This non-Court authorized GPS tracking enabled government agents to make numerous surveillance observations, which then became part of the majority of the probable cause in the search warrant affidavits (Exhibit1). Based on law enforcement's ability to track Mr. Wilford, *it is also suggested that a non-Court authorized GPS device was also employed in tracking Mr. Wilford's movements*.

2

ECF No. 92, at 1-2 (emphasis added). Although the motion then "aver[red]" several different instances of suspected GPS-tracking of Mr. Wilford, *id.* at 2-6, clearly those averments were not based on any actual discovery provided by the government concerning GPS-tracking of Mr. Wilford.

Similarly, in the second motion, filed in April 2012, Mr. Pupura alleged that: "As previously explained in Defendant's Motion to Suppress, it is the Defendant's *belief* that law enforcement continued to utilize non-Court authorized GPS units, which enabled them to observe several locations that they otherwise would not have been privy to." ECF No. 97, at 1 (emphasis added). In the third motion, Mr. Purpura stated: "It appears*, from the almost non-existent discovery on this issue*, that extensive use of warrantless GPS aided surveillance commenced in October 2010 and continued through May 2011." ECF No. 160, at 5 (emphasis added).

Mr. Purpura's arguments at the January 2013 suppression hearing – held shortly after he had accessed the discovery containing the GPS-tracking and "pinging" data[1] – demonstrate that Mr. Purpura still had nothing close to a "full understanding" of the nature and extent of GPS tracking and "pinging" (and how such evidence informed the inevitable discovery/independent source and "standing" issues). After AUSA Sippel and this Court specifically raised the inevitable discovery/independent source and "standing" hurdles that Mr. Purpura's suppression arguments faced (ECF No. 204, at 131-33), the following exchange occurred:

> THE COURT: . . . So if you were to prevail, what would actually be suppressed? Then there's the whole argument of independent source.

---

[1] ECF No. 171, at 1 (Mr. Purpura's 1/13/2013 Motion to Withdraw Request for GPS Data) ("Undersigned counsel learned while speaking with Mr. Sippel that the requested GPS data was in fact previously provided [in November 2012]. That undersigned counsel's computer expert was unable to locate the GPS data as it was embedded within other documents.").

3

> MR. PURPURA: It is. There's a lot of time periods, a lot of observations. *And we will be as clear as we can*.
>
> MR. SIPPEL: And I'm actually *looking forward to that [argument by Mr. Purpura]*, Your Honor, because when I sat down with my agents and we went through it, we concluded that, given all these alternative theories, that absolutely nothing would be suppressed unless you suppress all GPS data, all GPS pinging, somehow found standing for Mr. Wilford to challenge his codefendant's phones and pinging on their, or GPS pinging on their cars.

ECF No. 204, at 133 (emphasis added).[2]

Thereafter, Mr. Purpura did not provide this Court with any detailed analysis of what evidence was unaffected by the independent source/inevitable discovery exception, the good-faith exception, and Mr. Wilford's lack of "standing." Of course, Mr. Purpura could not possibly do so, because there was no such evidence, as AUSA Sippel correctly noted.

### 2. The government's arguments fail to focus on the relevant time period in this case – *the Spring of 2012*.

The government's letter brief wrongly focuses on the entire 2011-2013 pretrial time period. What matters most, in assessing whether Mr. Purpura provided ineffective assistance of counsel, is *what occurred in the Spring of 2012*. During that time, two key events occurred: (1) the written plea-bargain offer was made and rejected (and expired);[3] and (2) Mr. Purpura filed the first two motions to suppress

---

[2] The record of the January 2013 suppression hearing thus shows that, even by then, Mr. Purpura lacked a "full understanding" of the nature and extent of the GPS-tracking and "pinging" evidence.

[3] *See* Transcript of December 20, 2024 Hearing, at 107-08. Although Mr. Purpura testified that he believed that the government had made another plea bargain offer at some point thereafter – *see* Transcript of December 20, 2024 Hearing, at 35 – the statements of Mr. Purpura and AUSA Sippel at the *Lafler* hearing in December 2013 explicitly denied the existence of any such concrete plea offer. *See* ECF No. 308, at 14 (AUSA Sippel stated: "There were other plea negotiations, Your

4

without anything close to a "full understanding" of the nature and extent of the GPS-tracking and "pinging" evidence and the insurmountable hurdles that his motions faced. The Fourth Circuit has recognized that the relevant time period is the Spring of 2012 – when the plea offer was made and rejected. *United States v. Wilford*, No. 22-6793, 2024 WL 3825212, at *2 (4th Cir. 2024) ("Furthermore, the records the district court relied on to find that Wilford never intended to plead guilty memorialize proceedings that occurred well after Wilford declined the relevant plea deal. Thus, they do not conclusively foreclose his claim that he denied the plea deal based on counsel's alleged advice.").

In addition, viewing Mr. Wilford's actions shortly before trial in December 2013 – as the government's letter brief does (at pages 16-17, stating that "Mr. Wilford [still] could have pleaded guilty" then) – fails to appreciate that (1) Mr. Wilford then faced a 20-year mandatory minimum sentence; and (2) the government was neither then offering any plea-bargain offer nor expressing willingness to entertain one from Mr. Wilford. At that point, Mr. Wilford simply wished to preserve the Fourth Amendment issues for appeal based on Mr. Purpura's continued advice that the issues had the potential for success on appeal.

3. **The record in 2012-2013 affirmatively demonstrates that Mr. Purpura did not appreciate the insurmountable hurdles posed by the independent source/inevitable discovery exceptions and the "standing" doctrine (in addition to the good-faith exception) – and, thus, he failed to convey to Mr. Wilford that the Fourth Amendment motions had no chance of prevailing.**

---

Honor, that were very loose. But beyond, beyond April [2012], I don't think we had any kind of substantive plea negotiations."); *see also id*. at 14 (Mr. Purpura stated: "There has been really no substantive plea negotiations since then. At Mr. Wilford's request, I just recently, before start of trial, offered a resolution, which was rejected by the government. It wasn't the government suggested. It was defense, Mr. Wilford suggested it. That's it.").

As both the three motions that Mr. Purpura filed[4] and the record of two suppression hearings in 2013 clearly show, he lacked a sufficient appreciation of the multiple, insurmountable hurdles that his motions faced. *See, e.g.*, ECF No. 204, at 131-33; ECF No. 218, at 11-14, 34-42. Because he did not appreciate those hurdles, he could not have given Mr. Wilford meaningful advice about the viability of the Fourth Amendment suppression issues in this case – particularly during the Spring of 2012, when the only plea offer was still available to Mr. Wilford.

4. **The record clearly shows that Mr. Purpura advised Mr. Wilford that the Fourth Amendment motions had potential merit when in fact they had no merit whatsoever in view of the insurmountable hurdles posed by the good-faith exception, independent source/inevitable discovery exceptions, and the "standing" doctrine**.

The government relies on Mr. Purpura's December 2024 testimony to argue that Mr. Purpura advised Mr. Wilford that his chances of prevailing on the Fourth Amendment motions were "not good" or "not great." Government's Letter Brief, at 12-13. Yet Mr. Purpura's words from over a decade ago flatly contradict this assertion. ECF No. 726, at 3, 15 (Mr. Purpura's statement that the Fourth Amendment issue "may be a successful" on appeal); *see also* Transcript of December 20, 2024 Hearing, at 51-52 (Mr. Purpura's acknowledging that he wrote Mr. Wilford a letter in 2013 using the words "in anticipation of success" concerning the motions to suppress). Even at last month's evidentiary hearing, Mr. Purpura acknowledged that he told Mr. Wilford that the motions potential for success: "Did I say [to Mr. Wilford that] it was a complete loser? No. Did I think that it had potential in it? Yes." Transcript of December 20, 2024 Hearing, at 50.

---

[4] Significantly, Mr. Purpura never filed a reply to the government's response to his motions that raised the independent source/inevitable discovery exceptions.

Yet, in view of the insurmountable hurdles discussed above, the Fourth Amendment claim *was* a "complete loser" or at least very close to being a complete loser. It did not have any appreciable "potential" of success. Mr. Purpura should have advised Mr. Wilford of that fact in clear and unequivocal terms – rather than proceeding to file the motions to suppress, even before reviewing the discovery concerning the GPS-tracking and "pinging," leading Mr. Wilford to believe the Fourth Amendment claim could suppress critical evidence in the case.

5. **The record in 2013 rebuts Mr. Purpura's claim in December 2024 that Mr. Wilford went to trial for any reason other than to preserve the Fourth Amendment claim for appeal.**

Relying on Mr. Purpura's recent testimony, the government contends that "Wilford proceeded to trial because he thought he could prevail before the jury." Government's Letter Brief, at 14. The record from over a decade ago flatly contradicts that assertion. Mr. Wilford clearly went to trial for the purpose of preserving what he believed was a Fourth Amendment claim with a potential for success on appeal. *See* ECF No. 324, at 8 (Mr. Purpura stated shortly before the trial began that: "[A]s I know, as my client knows, *his trial is with the motions* . . . . *So for appellate reasons*, for all the reasons we've tried to, and he has, he's been diligent in looking at every avenue in this particular case.") (emphasis added); *see also* ECF No. 369, at 166 (Mr. Wilford stated at sentencing that: "[T]hroughout the whole process . . . I wasn't able to plead [guilty to the charges] in a sense to be able to preserve my Fourth Amendment issues or any other issues [for appeal]. So I was forced to have to go to trial behind all of this."); *see also id.* at 169 ("There was no plea [offer] on the table for me to accept responsibility and preserve my rights [for an appeal].").

7

**6. A defense attorney – not a criminal defendant – has the ultimate decision-making authority with respect to filing (or not filing) a pretrial motion to suppress.**

The government's brief also fails to acknowledge an important legal proposition that is integral to Mr. Wilford's ineffective-assistance claim: a criminal defense attorney – not the defendant – has the authority to decide whether to file a pretrial motion to suppress. *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998). Under the Sixth Amendment, the buck stopped with Mr. Purpura. He is the one who chose to file the entirely meritless motions to suppress. Although Mr. Wilford insisted that he do so, Mr. Purpura had the ultimate authority to decide whether to file the motions. If Mr. Purpura had possessed an adequate factual and legal understanding of the Fourth Amendment issues in the Spring of 2012, he would have advised Mr. Wilford in clear and unequivocal terms that the Fourth Amendment claim *entirely lacked merit* in view of the insurmountable hurdles discussed above. Mr. Purpura has admitted that he did not do so. Mr. Purpura was deficient by failing to do so, and there is a reasonable probability that, if he had done so, Mr. Wilford – who three times before had pleaded guilty to criminal charges – would have accepted the written plea-bargain offer.

Finally, Mr. Purpura's advising Mr. Wilford to accept the plea-bargain offer in the Spring of 2012 does not excuse his deficient performance in (1) simultaneously advising Mr. Wilford that the Fourth Amendment claim had the potential for success, at least on appeal; and (2) Mr. Purpura's filing the first two motions before even requesting discovery of the GPS-tracking and "pinging" evidence and filing the third before reviewing the discovery provided in November 2012.

This Court should grant § 2255 relief. If this Court does not do so, at the very least this Court should grant a certificate of appealability (COA) so the Fourth Circuit may again review Mr. Wilford's ineffective-assistance claim. That claim

clearly meets the "low" standard governing entitlement to a COA. *Frost v. Gilbert*, 835 F.3d 883, 888 (9th Cir. 2016); *see Miller-El v. Cockrell*, 537 U.S. 332, 337-342 (2003).

Respectfully submitted,

*Brent Evan Newton*

Counsel for Mr. Wilford

CERTIFICATE OF SERVICE

I certify that, on this 11th day of January, 2025, I served a copy of this document on counsel for the government, AUSA John Sippel, by filing it via this Court's CM/ECF system.

*Brent Evan Newton*

Brent Evan Newton